904 P.2d 1268

**SOUTHWEST AUTO PAINTING AND BODY REPAIR, INC., an Arizona Corporation, Plaintiff–Appellant,**

v.

**Jay BINSFELD and Jane Doe Binsfeld, Husband and Wife; General Southwest Insurance Agency, Inc., an Arizona Corporation, Defendants–Appellees.**

**No. 1 CA–CV 93–0305.**

Court of Appeals of Arizona, Division 1, Department A.

May 23, 1995.

As Corrected June 2, 1995.

Review Denied Oct. 24, 1995.

not owe a client or customer any duty to recommend or advise of the need for any specific insurance coverage. We hold that an agent owes a duty to a client or customer to exercise reasonable care, skill, and diligence in procuring insurance and that questions of the applicable standard of care and whether the agent breached his duty by failing to recommend specific coverage present questions for the trier of fact.

## I.

In June 1986, Robert Lanzon (Lanzon), a principal of appellant Southwest Auto Painting and Body Repair, Inc. (Southwest), met with Joe Binsfeld (Binsfeld), an insurance agent with appellee General Southwest Insurance Agency, Inc. (the agency), to discuss insurance coverage for Southwest.[1] Binsfeld's brother, who worked in Southwest's shop, had recommended Binsfeld to Lanzon.

Southwest's existing policy did not expire until March 1987. Lanzon decided to purchase his insurance through the agency because he hoped the agency would provide body work referrals. According to Lanzon, Binsfeld recommended certain insurance coverage for Southwest, and Lanzon was satisfied with the rate quoted. Because Lanzon was not trained or experienced in insurance coverage, he relied on Binsfeld and the agency for advice on, and procurement of, appropriate coverage for Southwest. Binsfeld did not mention employee dishonesty coverage to Lanzon, and the policy he recommended did not include coverage for losses resulting from employee embezzlement, dishonesty, or theft. Lanzon neither knew that the policy lacked such coverage nor realized that such coverage was available.

The agency procured insurance for Southwest from 1986 to 1989. Lanzon never sought advice on, or explanation of, the scope of Southwest's coverage.

In September 1986, Southwest hired Ilia Podolsky (Podolsky) as a bookkeeper and authorized her to sign checks for the busi-

Law Offices of Frederick C. Creasy, Jr. by Frederick C. Creasy, Jr., Christopher J. Zachar, Scottsdale, for plaintiff-appellant.

The Ranger Law Firm by Edward M. Ranger, Myles P. Hassett, Christopher D. Soto, Scottsdale, for defendants-appellees.

## OPINION

McGREGOR, Judge.

This appeal is from summary judgment entered in favor of defendants. In granting summary judgment, the trial court held that, as a matter of law, an insurance agent does

---

1. In an appeal from the grant of summary judgment, we view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Bishop v. State Dep't of Corrections*, 172 Ariz. 472, 475, 837 P.2d 1207, 1210 (App.1992).

ness account. From 1986 until June 1989, Podolsky embezzled approximately $150,000 from Southwest. When Lanzon contacted the agency to determine whether Southwest's insurance policy covered the embezzlement loss, he learned that the policy did not cover employee theft or dishonesty.

Southwest brought this malpractice action against Jay Binsfeld and the agency (collectively, appellees). The complaint alleged that appellees' failure to offer or advise Southwest of the need for employee dishonesty and theft coverage fell below the standard of care expected of an insurance agent and broker who obtain insurance coverage for a business. Southwest further alleged that, as the result of appellees' negligence, Southwest was uninsured for the loss Podolsky caused.

Appellees moved for summary judgment, arguing that the law does not recognize a duty to offer or recommend specific insurance coverage unless the agent has a special relationship with the insured. They asserted that no special relationship existed between Southwest and appellees. Thus, because appellees used reasonable care in procuring the requested coverage, as a matter of law they owed Southwest no duty to offer or recommend fidelity coverage.

In its response and cross-motion for summary judgment, Southwest maintained that appellees held themselves out as experts in the insurance business; thus, once Southwest engaged appellees to procure insurance and informed them of the nature of its business operations, appellees assumed a duty to advise Southwest properly. Southwest also argued that this duty existed independent of any special relationship; that if a special relationship were necessary, such a relationship existed; or, at a minimum, that whether the relationship existed presented a question of fact for the jury. Southwest offered expert testimony that the standard of care in the community for a professional insurance agent requires the agent to advise the insurance client about the availability of relevant types of coverage, particularly fidelity coverage for businesses with non-family member employees who have check signing authority or who handle cash.

The trial court granted appellees' motion for summary judgment and denied Southwest's cross-motion. The court recognized that the general duty of an insurance agent is "to exercise reasonable care, skill, and diligence in carrying out the agent's duties in procuring insurance," as described in *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984). The court concluded, however, that the general duty does not impose an affirmative duty on an insurance agent to offer or recommend specific insurance coverage. The court also found no special relationship between Southwest and appellees that might have imposed a duty on appellees to offer specific coverage. The court rejected the opinion of Southwest's expert that insurance agents have a duty to offer specific coverage and entered judgment in favor of appellees. Southwest timely appeals.

## II.

### A.

The initial question in a negligence action is whether the law imposes a duty on a defendant to conform to a certain standard of conduct to protect others from unreasonable risks of harm. *Rogers v. Retrum*, 170 Ariz. 399, 400, 825 P.2d 20, 21 (App.1991). The trial court decides as a matter of law whether a defendant owes a duty to the plaintiff. *Lasley v. Shrake's Country Club Pharmacy, Inc.*, 179 Ariz. 583, 585, 880 P.2d 1129, 1131 (App.1994). The court determines if such a duty exists by considering whether the relationship between the parties requires the defendant to use care to avoid injury to the plaintiff. *Bellezzo v. State*, 174 Ariz. 548, 550, 851 P.2d 847, 849 (App.1992).

The distinction between duty owed and breach of the standard of care long has been a source of confusion. The Arizona Supreme Court addressed the distinction in *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985), in which the court stated that "the existence of a duty is not to be confused with details of the standard of conduct." *Id.* at 355, 706 P.2d at 367. Duty is found in the relationship between individuals that "imposes upon one a legal obligation for

the benefit of the other...." *Id.* (*quoting* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed. 1984)). Details of conduct, such as whether a defendant should have posted warning signs or fixed potholes, have to do with whether the defendant breached the applicable standard of care, not whether a duty and attendant standard of care exist. *Id.; see also Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984).

■ Arizona case law defines the duty a licensed insurance agent owes to a client or customer. In *Darner,* our supreme court stated that "[a]n insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." 140 Ariz. at 397, 682 P.2d at 402 (*quoting Quality Furniture, Inc. v. Hay,* 61 Haw. 89, 595 P.2d 1066, 1068 (1979)). Appellees attempt to distinguish *Darner* by arguing that, although that decision establishes the general duty an insurance agent owes to represent policy provisions accurately, it does not expressly address the question whether an agent has a duty to offer or recommend specific coverage. They argue that this court should rely upon its decision in *Nowell v. Dawn–Leavitt Agency, Inc.,* 127 Ariz. 48, 617 P.2d 1164 (App.1980). In *Nowell,* we held that an insurance agent owes a duty to his client only when the agent receives consideration for his services apart from the premium or when a long-established relationship of trust exists between the agent and client. *Id.* at 52, 617 P.2d at 1168.

In light of the supreme court's holdings in *Darner* and *Markowitz,* we believe that *No-*

*well* no longer is good law. The *Darner* court criticized *Nowell's* limitation of the liability of an insurance agent to those situations in which the insured provided separate consideration for the agent's advice. The court stated that this limitation confused contract and tort principles and was irrelevant to the allegation of negligence. 140 Ariz. at 398, 682 P.2d at 403. In addition, the *Darner* court stated that *Nowell* construed the only other basis for imposing liability on an insurance agent—namely, where the agent appreciated he had a duty to give his client comprehensive advice—in an "excessively narrow fashion." *Id.*

The *Nowell* decision does what *Markowitz* later cautioned against: it confuses the existence of a duty with details of the standard of conduct. The *Nowell* court posed the legal question before it as whether the insurance agent had a duty to advise or impart information to a purchaser. However, according to *Darner,* an insurance agent's duty is to exercise reasonable care, skill, and diligence in procuring insurance for the insured. Thus, the proper legal question in *Nowell* was whether the agent breached that duty by failing to advise the insured of the availability of certain coverage. Such a question in *Nowell* would have involved determining the standard of care applicable to an insurance agent selling homeowner's insurance. *See Markowitz,* 146 Ariz. at 356, 706 P.2d at 368 (if a duty exists, the law requires the defendant to conform to a standard of care). The *Nowell* court's analysis of a duty to inform does not comport with *Darner* or *Markowitz* and thus does not determine the result in the case before us.[2]

---

**2.** In support of their position, appellees also cite a number of cases from other jurisdictions in which courts have held that insurance agents have no duty to advise of or recommend additional coverage or higher limits absent a special relationship with the insured. *See, e.g., Bruner v. League Gen. Ins. Co.,* 164 Mich.App. 28, 416 N.W.2d 318 (1987); *Beauty Craft Supply & Equip. Co. v. State Farm Fire and Cas. Ins. Co.,* 479 N.W.2d 99 (Minn.App.1992); *Hill v. Grandey,* 132 Vt. 460, 321 A.2d 28 (1974); *Gates v. Logan,* 71 Wash.App. 673, 862 P.2d 134 (1993); *Lisa's Style Shop, Inc. v. Hagen Ins. Agency, Inc.,* 181 Wis.2d 565, 511 N.W.2d 849 (1994); *Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343 (1990). Because those courts did not analyze

duty and breach of duty as the *Markowitz* court has instructed us to do, their decisions do not provide a framework for our analysis of the question before us. Moreover, the courts in *Nelson* and *Beauty Craft* based their holdings on the conclusion that an insurance agent's duty to an insured is limited to the duties imposed in an agency relationship, specifically to act in good faith and to follow instructions. *Nelson,* 456 N.W.2d at 346; *Beauty Craft,* 479 N.W.2d at 101; *see also Gabrielson v. Warnemunde,* 443 N.W.2d 540, 543 (Minn.1989). However, *Darner* states that the question of the duty that a licensed insurance agent owes to a customer is one of tort law, not agency law. 140 Ariz. at 397, 682 P.2d at 402.

Accordingly, we hold that appellees owed Southwest a duty to exercise reasonable care, skill, and diligence in procuring insurance coverage for Southwest. We therefore conclude that the trial court erred in finding, as a matter of law, that appellees did not owe any duty to Southwest.

### B.

Having decided that appellees owed a duty to Southwest, our next question is whether appellees breached the standard of care applicable to the duty. *See Lasley,* 179 Ariz. at 586, 880 P.2d at 1132. Whether the defendant's conduct breached the standard of care is usually a question for the trier of fact. *Bellezzo,* 174 Ariz. at 551, 851 P.2d at 850. However, if we can say that, as a matter of law, appellees did not breach their standard of conduct, we may affirm the trial court's judgment in their favor, even though the court erred in granting summary judgment based on lack of duty. *Lasley,* 179 Ariz. at 586, 880 P.2d at 1132.

Ordinarily, the standard of care to be applied in a negligence action focuses on the conduct of a reasonably prudent person under the circumstances. *Bell v. Maricopa Medical Ctr.,* 157 Ariz. 192, 194, 755 P.2d 1180, 1182 (App.1988). However, when a person holds himself out to the public as possessing special knowledge, skill, or expertise, he must perform according to the standard of his profession. *Darner,* 140 Ariz. at 398, 682 P.2d at 403; *see also Hardt v. Brink,* 192 F.Supp. 879, 881 (W.D.Wash. 1961) (in occupations involving specialties and professional status, law requires higher standard of care in performance of duties). An insurance agent therefore must exercise the degree of care ordinarily expected of persons in the profession. *Darner,* 140 Ariz. at 398, 682 P.2d at 403.

In response to appellees' motion for summary judgment, Southwest presented deposition testimony from its insurance expert. The expert testified that the standard of care in the community for professional insurance agents requires agents to advise clients about the relevant types of coverage that are available and the cost of the coverage, either in a written confirmation of information given orally or in a written proposal handcrafted to the individual needs of the prospective insured. He also opined that, because fidelity coverage is widely available at a relatively modest cost, insurance agents should recommend it to businesses that have employees outside the owner's family who either have check-signing authority or handle cash.

This testimony raised a question of fact as to whether the standard of care for a professional insurance agent such as Binsfeld includes the responsibility to advise a prospective client of the availability of relevant types of coverage.[3] We cannot conclude, as a matter of law, that appellees did not breach the standard of care for the duty it owed to Southwest.

### III.

Based on the foregoing, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

FIDEL, P.J., and WEISBERG, J., concur.

---

3. The trial court did not question the credentials of the expert but instead summarily rejected his opinion. Absent any finding that the expert was not qualified to give such opinions, his testimony presented a question of the applicable standard of care for the trier of fact to decide.