Cheshire
No. 2001-594

MICHAEL M. SINTROS & a.

v.

THOMAS HAMON & a.

Submitted: July 26, 2002
Opinion Issued: October 29, 2002

*Phillips Law Office, P.L.L.C.*, of Concord (*Roger B. Phillips* on the brief), for the plaintiffs.

*Mallory and Friedman, P.L.L.C.*, of Concord (*Mark L. Mallory* on the brief), for the defendants.

*Donahue Law, P.A.*, of Vero Beach, Florida (*Kathryn B. Johnston* on the brief), for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

BROCK, C.J. The plaintiffs, Michael and Thomas Sintros, appeal from an order of the Superior Court (*Mangones*, J.) granting summary judgment to the defendants, Thomas Hamon and Horace Mann Insurance Companies (Horace Mann). We affirm.

Considering the record in the light most favorable to the plaintiffs, the relevant facts follow. Thomas Sintros purchased automobile insurance

from Horace Mann through its agent, Hamon. Michael Sintros, Thomas' son, was named as an insured under his father's policy. Horace Mann provided automobile insurance to the Sintros family for at least seven years. Over that time period, the Sintroses communicated with Hamon regarding new vehicles, additional drivers, and discounts for good driving records and good grades. In August 1997, Michael was seriously injured in an automobile accident while riding as a passenger in a friend's vehicle. Michael's medical expenses exceeded the friend's $100,000 liability policy limit. No further recovery was available under the Sintroses' policy with Horace Mann because their uninsured/underinsured motorist policy also contained a $100,000 liability limit, and their policy provided no excess coverage. The Sintroses brought a negligence action against Hamon, asserting that Hamon breached his duty to act as a reasonable insurance agent when he failed to recommend adequate and sufficient insurance coverage. The Sintroses also brought a negligence action against Horace Mann under a theory of vicarious liability, and for negligent training and supervision.

The defendants moved for summary judgment, arguing that neither Hamon nor Horace Mann owed a duty to advise the plaintiffs regarding the sufficiency of their insurance coverage. The defendants asserted that a duty to advise could arise only if a special relationship existed between the two parties, and because no such relationship existed, there was no duty to advise.

The superior court granted summary judgment to the defendants, ruling that "[a]n insurance agent does not have a general duty to advise an insured as to the sufficiency of coverage." In its decision, the superior court stated that while a duty to advise might arise if an agent responds to an insured's inquiry regarding the sufficiency of coverage, there was no such evidence in this case. Alternatively, the court stated that a duty to advise might arise if a special relationship existed between the parties, but the record, viewed in the light most favorable to the Sintroses, did not support such a finding.

On appeal, the plaintiffs argue that: (1) an insurance agent owes clients a duty of reasonable care which includes a duty to recommend adequate liability and underinsured motorist coverage, and that the superior court erred in requiring a special relationship between the parties before imposing such a duty; and (2) even if the special relationship test applies, the relationship between the parties satisfies that test. The plaintiffs do not raise Horace Mann's possible liability as a separate issue. Because Horace Mann's liability would be predicated on a finding that its agent was negligent, we deal with only the duties an insurance agent owes clients.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *See Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537 (1997). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation and brackets omitted). We review the trial court's application of the law to the facts *de novo. See id.*

To recover for negligence, a plaintiff must demonstrate that there exists a duty, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff. *Dupont v. Aavid Thermal Technologies*, 147 N.H. 706, 709 (2002) . Thus, for liability to exist in this case, the plaintiffs must first show that the defendants had an affirmative, on-going duty to provide advice regarding the availability or adequacy of particular insurance coverage.

The existence of a duty in a particular case is a question of law. *Hungerford v. Jones*, 143 N.H. 208, 211 (1998). In general, the concept of duty arises out of the relationship between the parties and protection against reasonably foreseeable harm. *Simpson v. Calivas*, 139 N.H. 1, 4 (1994). The existence and extent of that duty depends upon the nature of the relationship between the parties. *Jacobson v. Yoken's, Inc.*, 104 N.H. 331, 333 (1962).

Because the duty an insurance agent owes to an insured is an issue of first impression in New Hampshire, we look to other jurisdictions for guidance. *Simpson*, 139 N.H. at 5. A majority of courts that have considered the issue have held that an insurance agent owes clients a duty of reasonable care and diligence, but absent a special relationship, that duty does not include an affirmative, continuing obligation to inform or advise an insured regarding the availability or sufficiency of insurance coverage. *See, e.g., Peter v. Schumacher Enterprises, Inc.*, 22 P.3d 481, 482-83, 486 (Alaska 2001); *Szelenyi v. Morse, Payson & Noyes Ins.*, 594 A.2d 1092, 1094 (Me. 1991); *Sadler v. Loomis*, 776 A.2d 25, 46 (Md. Ct. Spec. App. 2001); *Robinson v. Charles A. Flynn Ins. Agency*, 653 N.E.2d 207, 207-08 (Mass. App. Ct. 1995); *Harts v. Farmers Ins. Exchange*, 597 N.W.2d 47, 48 (Mich. 1999); *Murphy v. Kuhn*, 682 N.E.2d 972, 974 (N.Y. 1997); *Nelson v. Davidson*, 456 N.W.2d 343, 344 (Wis. 1990). *But see SW Auto Painting v. Binsfeld*, 904 P.2d 1268, 1271-72 (Ariz. Ct. App. 1995); *Dimeo v. Burns, Brooks & McNeil, Inc.*, 504 A.2d 557, 559 (Conn. App. Ct. 1986).

That general duty of care excludes an affirmative obligation to give advice regarding the availability or sufficiency of coverage for several persuasive reasons. Some courts have reasoned that insureds are in a better position to assess their assets and the risk of loss to which they may be exposed. *See, e.g., Peter*, 22 P.3d at 486; *Sadler*, 776 A.2d at 40; *see also* Annotation, *Liability of Insurer or Agent of Insurer for Failure to Advise Insured as to Coverage Needs*, 88 A.L.R.4TH 249, 257 (1991) ("unrealistic to impose on an insurance agent the ongoing duty of surveillance with respect to an insured's constantly changing circumstances"). These courts have also noted that decisions regarding the amount of insurance coverage are personal and subjective, based upon a trade-off between cost and risk. *See Peter*, 22 P.3d at 486; *Sadler*, 776 A.2d at 40. An insurance agent is in no better position than the insured to predict the extent of damage that the insured might incur at some time in the future. *See Sadler*, 776 A.2d at 40; *Murphy*, 682 N.E.2d at 976.

Imposing liability on insurance agents for failing to advise insureds regarding the sufficiency of their insurance coverage would "remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available," *Nelson*, 456 N.W.2d at 346, and would convert agents into "risk managers with guarantor status." *Sadler*, 776 A.2d at 40-41 (quotation omitted); *see also Murphy*, 682 N.E.2d at 976. Significantly, "the creation of a duty to advise could afford insureds the opportunity to insure after the loss by merely asserting they would have bought the additional coverage had it been offered." *Nelson*, 456 N.W.2d at 346. "This would amount to retroactive insurance, a concept that turns the entire theory of insurance on its ear." *Peter*, 22 P.3d at 486 (quotation omitted).

Despite this general rule, most courts acknowledge that the existence of a special relationship could impose upon an insurance agent an affirmative duty to provide advice regarding the availability or sufficiency of insurance coverage. *See, e.g., Harts*, 597 N.W.2d at 52; *Murphy*, 682 N.E.2d at 974-75. This exception, imposing an affirmative duty to aid or protect another when a special relationship exists between the parties, is consistent with New Hampshire law. *Ahrendt v. Granite Bank*, 144 N.H. 308, 314 (1999).

An insured can demonstrate a special relationship by showing that there exists something more than the standard insurer-insured relationship. *Nelson*, 456 N.W.2d at 347. This depends upon the particular relationship between the parties and is determined on a case-by-case basis. *Hardt v. Brink*, 192 F. Supp. 879, 881 (W.D. Wash. 1961); *Murphy*, 682

N.E.2d at 975. Examples include express agreement, long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, additional compensation apart from premium payments, and the agent holding out as a highly-skilled expert coupled with reliance by the insured. *Nelson*, 456 N.W.2d at 347. Some courts also recognize a special relationship when the insured relies upon an agent's offered expertise regarding a question of coverage, or where there is a course of dealing over time putting the agent on notice that his advice is being sought and relied upon. *Murphy*, 682 N.E.2d at 975-76. If a special relationship exists between the parties, the plaintiff must demonstrate not only the existence of the relationship, but also that he or she justifiably relied upon that relationship. *See Island Shores Estates Condo. Assoc. v. City of Concord*, 136 N.H. 300, 303 (1992); *Hartman v. Town of Hooksett*, 125 N.H. 34, 37 (1984).

The plaintiffs cite two cases from other jurisdictions to support their position that an insurance agent's general duty of care includes an obligation to advise the insured regarding the adequacy of insurance coverage. *See SW Auto*, 904 P.2d at 1269; *Dimeo*, 504 A.2d at 559. We find these cases unpersuasive.

Although the court in *Dimeo* sustained a trial court's jury instruction that imposed a duty to advise upon an insurance agent, *Dimeo*, 504 A.2d at 559, it is important to recognize the procedural posture of the case. In that case, the jury had returned a verdict for the defendant insurance agent, and the plaintiff's appeal challenged the jury instructions. *Id.* at 558. Thus, the defendant, having prevailed below, had no incentive to challenge the content of the jury instructions. The court merely concluded that, based upon the facts in the record, the lower court's jury instructions were "legally correct, adapted to the issues in the case, and clearly and fairly presented the case to the jury." *Id.* at 559.

In *SW Auto*, the court concluded that "an insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *SW Auto*, 904 P.2d at 1271 (quotation and brackets omitted). However, the court could not determine, as a matter of law, whether the defendant breached that standard of care by not advising his client of the availability of a particular category of business insurance coverage. *Id.* at 1272. These cases do not persuade us to depart from the majority rule that an insurance agent owes clients a duty of reasonable care and diligence, but absent a special relationship, that duty does not include an affirmative, continuing obligation to inform or advise an insured regarding the availability or sufficiency of insurance coverage.

The plaintiffs caution against abandoning the ordinary negligence standard. The rule we adopt today, however, is an application of ordinary negligence. For example, an agent could be liable for negligent misrepresentations or a failure to provide agreed-upon insurance coverage. While an insurance agent owes a duty of reasonable care, an agent cannot be held liable for failing to provide unsolicited advice regarding clients' ever-changing insurance needs.

We turn now to the plaintiffs' argument that the trial court erred when it held that no special relationship existed between the parties. The existence of a special relationship requires a fact-specific inquiry. *Hardt*, 192 F. Supp. at 881. Because this comes to us by way of a motion for summary judgment, we consider whether any reasonable trier of fact could find that a special relationship existed between the parties. *Cf. Clark v. McKerley*, 126 N.H. 778, 779-80 (1985).

Based upon our review of the record, we conclude that the plaintiffs have failed to set forth facts that would establish a special relationship between the parties. The record merely establishes a standard insurer-insured relationship. The record does not indicate that Hamon or Horace Mann expressly contracted to assume the duties of insurance counselors, advisors or consultants. There is also no evidence in the record that Hamon received additional compensation from the Sintroses to provide advice or consultation nor that he held himself out as an insurance specialist or highly-skilled expert. While Horace Mann's brochures indicate the company's focus on the insurance needs of educators, they do not state that its agents are consultants, experts or specialists. The brochures note that Horace Mann takes the responsibility of protecting its customers seriously, but that responsibility relies upon a partnership in which decisions are ultimately reserved for the insured: "We give you a variety of coverage options, so *you* can adjust the amount of your protection and premiums." (Emphasis added.) If anything, the brochures make clear that Horace Mann agents do not assume an on-going duty of assessing an insured's coverage needs: "agents . . . can help *you* design an auto insurance program that fits your needs and your budget." (Emphasis added.) These statements reflect nothing more than the standard insurer-insured relationship.

The plaintiffs also attempt to establish that Hamon was obligated to advise the Sintroses by referring to Horace Mann employee training materials that encourage agents to properly advise their clients regarding adequate insurance protection. An employee handbook, defining employee roles and standards, does not, alone, define a legal duty of care between an

employee and customer. *See Ahrendt*, 144 N.H. at 312 (concluding that a fiduciary duty between a bank and a customer does not arise merely because an employee handbook states that bank employees should comply with certain ethical standards); *see also Lisa's Style Shop v. Hagen Ins. Agency*, 511 N.W.2d 849, 853 (Wis. 1994) (explaining that advertisements and insurance manuals do not create enforceable standards of professional conduct; noting there was no evidence of plaintiffs' reliance upon these materials).

The deposition testimony of both parties demonstrates that Hamon was leaving decisions about insurance coverage to the Sintroses rather than undertaking the responsibility of giving advice. There is no evidence that the Sintroses ever inquired about the sufficiency of the liability limits of their insurance policy. Although Sintros states that he relied on Hamon "for *all* of [his] *automobile insurance needs*, including limit amounts and types of policies," there is neither evidence that Hamon offered his expertise nor that Sintros relied upon such expertise in making insurance decisions. There is no evidence that Hamon assumed the duty of monitoring the Sintroses' ever-changing insurance needs and offering unsolicited advice regarding their insurance coverage. The typical insurer-insured relationship includes reliance upon the agent to procure requested insurance coverage from the insurer; nothing in the record establishes that the relationship between Hamon and Sintros was special. Had the plaintiffs wished to assure themselves of the adequacy of their insurance coverage, that duty was theirs.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.