HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C., a West Virginia Limited Liability Company, Plaintiff,

v.

**XL SPECIALTY INSURANCE COMPANY, et al., Defendants.**

**No. CIV.A. 2:02–1437.**

United States District Court, S.D. West Virginia, Charleston Division.

May 13, 2003.

Marvin W. Masters and Richard A. Monahan, Masters & Taylor, LC, Charleston, WV, R. Edison Hill, Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C., Charleston, WV, for Plaintiff Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.

John R. Fowler and James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, WV, for Defendants XL Specialty Insurance Company and W. Brown & Associates Property & Casualty Insurance Services.

J. Rudy Martin and Christopher D. Pence, Jackson Kelly PLLC, Charleston, WV, for Defendant The Hoxton Agency, Inc.

## MEMORANDUM OPINION & ORDER

GOODWIN, District Judge.

Pending is a motion to remand to state court filed by the plaintiff, Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. (Hill) [Docket 21]. For the following reasons, the court **GRANTS** the motion and **RE-MANDS** the case to state court.

## I. Background

On November 12, 2002, Hill filed a complaint in Kanawha County Circuit Court against its insurer, XL Specialty Insurance Company (XL Specialty), XL Specialty's aviation insurance manager, W. Brown & Associates Property & Casualty Insurance Services (W.Brown), and Hill's local insurance agent, The Hoxton Agency, Inc. (Hoxton). Hill's complaint alleged state tort and contract claims against the defendants arising out of the crash of Hill's Piper Navajo Chieftan airplane, which resulted in the death of the pilot, R. Edward Pinney, and the total loss of the aircraft. Hill had purchased aircraft or "hull" insurance in the amount of $350,000 and liability insurance in the amount of $10,000,000 from XL Specialty though its local agent, Hoxton.

Following the fatal crash, XL Specialty denied Hill's claim for payment pursuant to the hull insurance policy. XL Specialty claimed that the validity of the hull policy was conditioned on the pilot's annual completion of a training program, and that the pilot in this case had not received the required training in the past twelve months. XL Specialty therefore denied coverage on the ground that the pilot's failure to maintain the required training rendered the hull coverage invalid. Hill brought this suit against XL Specialty as well as the local insurance agent, Hoxton. The defendants removed the case to this court on the ground of diversity of citizenship, claiming that Hoxton had been fraudulently joined in order to defeat diversity jurisdiction. Hill has filed a motion to remand the case to state court, arguing that Hoxton is a valid defendant and was not fraudulently joined.

## II. Discussion

Under 28 U.S.C. § 1332(a)(1), this court has jurisdiction over a case in-

volving purely state-law claims when the amount in controversy exceeds $75,000 and all of the adverse parties are citizens of different states. Here, the complaint alleges that the plaintiff is a West Virginia limited liability company, XL Specialty is an Illinois corporation, W. Brown is a California corporation, and Hoxton is a West Virginia corporation. Ordinarily, then, the plaintiffs would be entitled to a remand to state court, because complete diversity of citizenship is not present. However, when the non-diverse defendant has been fraudulently joined by the plaintiff in order to defeat federal jurisdiction, "a district court [may] disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999). To show fraudulent joinder, the removing party must show that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.*

To establish fraudulent joinder in this case, the defendants must prove that there is no possibility that the plaintiff will be able to establish a cause of action against Hoxton. Accordingly, the court will examine the plaintiff's claims against Hoxton in order to determine whether those claims have any possibility of success. The complaint alleges that Hoxton had a duty "to notify the plaintiff of any reason that any aspect of plaintiff's aircraft insurance might be considered invalid by its insurer," and that Hoxton breached that duty by failing to notify Hill that its

pilot's training had fallen out of compliance with the hull policy. (Compl.¶ 14.) In support of its allegation of a duty to inform, Hill alleges that Hoxton has served as its insurance agent for at least ten years and was aware prior to the crash that Mr. Pinney's training was no longer in compliance with the policy. (Compl. ¶ 13.) The defendants argue that the law imposes no duty on Hoxton to monitor Hill's compliance with the terms of their policy or to inform Hill of any non-compliance.

Many courts have recognized the general rule that "absent special circumstances, an insurer or its agent has no duty to advise an insured as to the insured's insurance coverage needs." Gary Knapp, Annotation, *Liability of insurer of agent of insurer for failure to advise insured as to coverage needs,* 88 A.L.R.4th 249, § 3, 1991 WL 741640 (1991) (citing, *inter alia, Peter v. Schumacher Enters., Inc.,* 22 P.3d 481, 485 (Alaska 2001); *Marlo Beauty Supply, Inc. v. Farmers Ins. Group of Cos.,* 227 Mich.App. 309, 575 N.W.2d 324, 327 (1998); *Fitzpatrick v. Hayes,* 57 Cal. App.4th 916, 67 Cal.Rptr.2d 445, 452 (1997)). However, these same courts acknowledge that an insurance agent may have a duty to advise an insured on its coverage needs if (1) a special relationship exists between the insured and the agent, (2) the agent holds itself out as a specialist in the particular field, or (3) the agent misrepresents the scope or nature of the insured's coverage. *See Peter,* 22 P.3d at 485; *Marlo Beauty Supply,* 575 N.W.2d at 327; *Fitzpatrick,* 67 Cal.Rptr.2d at 452. The Supreme Court of New Hampshire recently provided the following examples of special circumstances giving rise to a duty to inform an insured of coverage needs:

> express agreement, long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, additional compensation

apart from premium payments, . . . the agent holding out as a highly-skilled expert coupled with reliance by the insured, . . . or where there is a course of dealing over time putting the agent on notice that his advice is being sought and relied upon. *Sintros v. Hamon,* 148 N.H. 478, 810 A.2d 553, 556 (2002). Neither party has cited, nor has the court found, caselaw from West Virginia addressing how and if West Virginia might adopt and apply these factors in determining whether a duty existed in this case. In the absence of any West Virginia state law directly on point, the court will consider the above-cited analogous authority from other jurisdictions to determine whether the plaintiff's claims may have merit.

In this case, the plaintiff has presented evidence that it has a long-standing relationship with Hoxton, that it has relied on Hoxton to keep it appraised of its aviation insurance needs as well as its compliance with the terms of its policies, and that Hoxton holds itself out as an expert in the field of aviation insurance. The following facts are stated by R. Edison Hill, a member of the plaintiff firm, in an affidavit. (Memorandum in Support of Plaintiff's Motion to Remand, Exh. B.)[1] According to Mr. Hill, Hoxton "has held itself out as being highly skilled experts in providing insurance for airplanes." The Hoxton website describes the company as "aviation insurance specialists," and explains that its goal is "to take a complicated field—Aviation Insurance—and make it understandable to our clients." (*Id.* Exh. C.) Hill always dealt exclusively with Hoxton in all matters related to its aviation insurance. Colleen Adams, a Hoxton employee, informed Hill of the pilot training requirements under the $10 million liability policy but failed to similarly inform Hill of such requirements for the $350,000 hull policy, thereby creating a reasonable expectation that pilot training was a requirement only for the liability policy. Hoxton annually sent Hill insurance renewal forms, including pilot record forms created by Hoxton to ensure pilot compliance with policy training requirements. Hoxton has routinely required Hill to provide copies of pilot's training certificates, and has called Hill to request copies when Hill failed to do so. On August 9, 2002, eleven days before Hill's renewal date, Mr. Hill faxed Ms. Adams Hoxton's pilot record form for Mr. Pinney. This form stated that Mr. Pinney's last training session was completed in January of 2001, which indicated that Mr. Pinney was about six months overdue for a refresher training session.

In light of these facts, the court cannot conclude that "there is no possibility that the plaintiff would be able to establish a cause of action against [Hoxton] . . . in state court." *Hartley,* 187 F.3d at 424. The facts presented by the plaintiff, if credited by a factfinder, could possibly establish a "long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, . . . the agent holding out as a highly-skilled expert coupled with reliance by the insured, [and/or] . . . a course of dealing over time putting the agent on notice that his advice is being sought and relied upon." *Sintros,* 810 A.2d at 556.

The defendant acknowledges the existence, in at least some state caselaw, of the "special relationship" exception to the general rule that an insurance agent owes no duty to the insured to notify it of its coverage needs. The defendant argues,

---

[1]. Because the court determines whether the plaintiff may have a viable claim by drawing all factual inferences in the favor of the plaintiff, the court takes the following facts as true solely for the purpose of ruling on the plaintiff's motion to remand.

however, that these cases impose, at most, a duty on the agent to advise the insured of its coverage needs, not to monitor the insured's ongoing compliance with its pre-existing insurance coverage. The court is unpersuaded by this distinction. For example, in *Northern Assur. Co. v. Stan–Ann Oil Co.*, 603 S.W.2d 218 (Tex.Civ. App.1979), the court held that an insurance agent could be held liable for its failure to inform its insured that the insured had omitted computer equipment on its monthly insurance reporting form. The insurance policy in question required the insured to submit, on a month-by-month basis, a list of the equipment that it wanted covered by the insurance policy. *Id.* at 224. The insured failed to list certain computer equipment, and the insurance agent, who had received the form from the insured, failed to bring this to the insured's attention. *Id.* The circumstances of this case are similar—the plaintiff seeks to hold the insurance agent liable for failing to ensure that the insured was meeting its obligations for maintaining the desired levels of coverage.

It is again worth emphasizing that the issue before this court is not whether the plaintiff will indeed prevail on its claims against Hoxton. Rather, the court must determine whether, "resolving all issues of law and fact in the plaintiff's favor" *Hartley*, 187 F.3d at 424, the plaintiff has some possibility of success. Given the facts averred by the plaintiff and the principles of law discussed above (which may or may not eventually be adopted by the West Virginia courts), the defendant has not carried its burden to show that the plaintiff has no possibility of success on its claims against Hoxton.

### III. Conclusion

For the foregoing reasons, the court concludes that Hill has some possibility of success on its claims against Hoxton, the non-diverse defendant. Accordingly, Hoxton's joinder in this action as a defendant is not fraudulent. Because both the plaintiff and Hoxton are West Virginia citizens, there is not complete diversity of citizenship between all adverse parties, and this court lacks diversity jurisdiction over this case. The court therefore **GRANTS** the plaintiff's motion to remand and **REMANDS** the case to state court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at *http://www.wvsd.uscourts.gov*.