# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael A. Aldridge, an assignee**
**of Fahey Exteriors, LLC,**
**a West Virginia limited liability company,**
**Plaintiff Below, Petitioner**

**FILED**

**June 17, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0658**  (Kanawha County 13-C-529)

**Highland Insurance Company, and**
**Sharon Rees,**
**Third-Party Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner and plaintiff below,[1] Michael A. Aldridge, by counsel Lia DiTrapano Fairless, Rudolph L. DiTrapano, and Robert M. Bastress III, appeals the June 1, 2015, order of the Circuit Court of Kanawha County that granted summary judgment in favor of respondents and third-party defendants below, Highland Insurance Company and Sharon Rees. Respondents, by counsel Dwayne E. Cyrus and Michael D. Dunham, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 21, 2013, Petitioner Michael Aldridge was employed by Fahey Exteriors, LLC, a roofing and construction company. According to petitioner, his employer ordered him to climb onto a high, steeply-graded, icy roof without a safety harness.[2] Petitioner was seriously

---

[1] As explained below, at the time of entry of the circuit court's summary judgment order, petitioner also stood in the position of assignee of Fahey Exteriors, LLC's claim against third-party defendant Highland Insurance Company and its agent.

[2] Petitioner avers that safety harnesses are "legally required" and that his employer refused to wait for another employee to transport the harnesses to the job site.

1

injured when he slipped on a patch of frost and fell thirty-five to forty feet onto the ground.[3]

On March 25, 2013, petitioner filed an amended complaint against Fahey Exteriors, LLC, and Joshua Fahey, its principal owner (collectively referred to as "Fahey"), in the Circuit Court of Kanawha County, alleging that Fahey "acted with deliberate intention in causing injury to [petitioner] in violation of West Virginia Code § 23-4-2."

At the time of petitioner's injury, Fahey believed that it had insurance coverage for petitioner's deliberate intent claim. Upon learning that it had no such coverage, in July of 2014, Fahey filed a third-party complaint against Respondents Highland Insurance Company and Sharon Rees, the company's employee and petitioner's insurance agent, in which it alleged "Negligence: Failure to Properly Inform Client of Adequate Coverage." The third-party complaint alleged that respondents "are in the business of selling insurance and as insurance professionals have a duty to fully inform each and every client of their adequate options to protect them fully[,]" and that respondents "breach[ed] their duty to properly inform . . . Fahey of the adequate coverage and, as a result, . . . Fahey ha[s] inadequate coverage for the injuries caused to [petitioner] in this matter." The third-party complaint further alleged that, given the dangerous nature of the roofing and construction business, respondents should have informed Fahey of the necessity of carrying "stop-gap" coverage for deliberate intent claims. Finally, the third-party complaint alleged that, as a result of respondents' failure to inform Fahey of the proper coverage required "to protect the business fully and adequately against deliberate intent claims[,]" Fahey "may be exposed to liability and the full damages should a jury rule this accident fell within the deliberate intent elements."

On February 25, 2015, respondents filed a motion for summary judgment in which it argued that, at the time Joshua Fahey purchased insurance coverage for the company in 2009, he elected to waive deliberate intent coverage in order to save money on the insurance premium. During his deposition, Mr. Fahey admitted that he was presented with a written waiver entitled "DELIBERATE INTENT COVERAGE[,] WORKERS COMPENSATION INSURANCE," which that stated that

> WORKERS COMPENSATION INSURANCE HAS BEEN QUOTED WITH VARIOUS LIMITS OF COVERAGE. THE OPTIONAL DELIBERATE INTENT COVERAGE HAS BEEN EXPLAINED TO ME. I HAVE CHOSEN THE LIMITS OF $100,000 EACH ACCIDENT, $500,000 POLICY AGGREGATE AND $100,000 EACH DISEASE. AS FAR AS THE OPTIONAL COVERAGE OF DELIBERATE INTENT:

Underneath this notice, which was dated November 4, 2009, Mr. Fahey checked the line next to the statement, "I wish to decline this coverage" and signed the form. A handwritten notation by Respondent Rees at the bottom of the waiver stated, "11-4-09 spoke with Joshua

---

[3] Petitioner states that he has undergone eight ankle surgeries, has had numerous bone infections, and that he may ultimately have to have his leg partially amputated. Petitioner states that he also injured his back and neck.

about deliberate intent-he has to keep prem. down so he doesn't want the cov. now." Respondent Rees further testified that, when Fahey's policy came up for its second renewal in 2011, Fahey again declined deliberate intent coverage.[4] As further support for their motion for summary judgment, respondents submitted evidence that the policy in effect at the time of petitioner's injury was sent to Fahey directly from his insurer, Brickstreet Insurance. In correspondence dated November 9, 2012, that was sent to Fahey along with the policy, Brickstreet requested that Fahey, as the policyholder, "review the enclosed policy carefully to make sure all the information about your business is correct." The policy itself included the West Virginia Intentional Injury Exclusion Endorsement, which stated, in relevant part, as follows:

> F. Payments You Must Make
>
> You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:
>
> of your serious and willful misconduct, or arising out of West Virginia Annotated Code §23-4-2.

The policy further provided:

> This insurance does not cover:
>
> 5. Bodily injury caused by your intentional, malicious or deliberate act, whether or not the act was intended to cause injury to the employee injured, or whether or not you had actual knowledge that an injury was certain to occur, or any bodily injury for which you are liable arising out of West Virginia Annotated Code §23-4-2.

In their motion for summary judgment, respondents argued that no cause of action for negligent failure to properly inform clients of adequate insurance coverage exists in West Virginia and, even if it did, given all of the evidence, respondents did not breach any such duty to inform with regard to Fahey's policy of insurance.

Meanwhile, petitioner and Fahey engaged in mediation on February 27, 2015, and reached a settlement agreement under which Fahey admitted liability and damages to petitioner for the deliberate intent claim in excess of the amount of insurance coverage Fahey had purchased from respondents. The agreement further provided for the assignment of all of Fahey's right, title, and interest in and to all of its claims set forth in the pending third-party complaint to

---

[4] Attached to respondents' motion for summary judgment was a "broad form" that Respondent Rees testified was a breakdown of the deliberate intent statute that she routinely discusses with clients. Although she did not specifically recall whether she gave a copy of the broad form to Mr. Fahey, she testified that she discussed it with him. In fact, Respondent Rees's handwritten notes, dated November 4, 2011, indicated as follows: "Disc. Broad form—doesn't want cov. at this time."

3

petitioner. Over respondents' objection, the circuit court thereafter dismissed petitioner's claim against Fahey "inasmuch as [petitioner] 'stands in [Fahey's] shoes" as an assignee with regard to the remaining third-party claim against [respondents]."

On March 4, 2015, petitioner moved for an extension of the March 6, 2015, discovery deadline on the ground that, "[b]efore the complexion of this case changed by virtue of the agreement at mediation, [petitioner] had not been actively litigating the insurance issues against [respondents]." Petitioner's motion further stated that, although he "believes he has the necessary evidence to defeat the [respondents'] pending motion for summary judgment, [petitioner] has not had the opportunity to discover all of the information relating to the third-party claim that may be required for trial of said claim."

On March 30, 2015, petitioner filed a motion to continue the trial date, arguing that "limited discovery has been conducted regarding whether or not Sharon Rees was negligent in providing the appropriate insurance coverage to [Fahey]." By orders entered March 31, 2015, the circuit court granted petitioner's motion to continue the trial date and entered a scheduling order that continued the trial date to June 22, 2015. The order did not extend the discovery deadline.

On April 16, 2015, the circuit court conducted a hearing on respondents' motion for summary judgment. Thereafter, by order entered June 1, 2015, the circuit court concluded that West Virginia law does not recognize a claim based upon an insurance agent's "duty to advise" its clients regarding coverage and that, even if such a duty existed, the record does not establish a breach of that duty. The circuit court further found that, with regard to a claim for negligent failure to procure insurance,[5] "there must be a request for desired coverage that was not procured." The circuit court concluded that the evidence does not suggest that Fahey requested deliberate intent coverage from respondents and that, "[t]o the extent that [petitioner] intends to pursue a failure to procure theory, that claim also fails as a matter of law because Joshua Fahey declined the deliberate intent coverage and, therefore, the [respondents] had no duty to procure deliberate intent coverage for Fahey Exteriors, LLC." The circuit court thus granted summary judgment in favor of respondents. This appeal followed.

This case presents an appeal from an order of the circuit court granting summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard,

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the

---

[5] Although the amended third-party complaint alleged only a failure to advise claim, petitioner raised the failure to procure claim at the summary judgment hearing. Given that the circuit court addressed the latter claim in its summary judgment order, it appears that the court effectively allowed petitioner to amend the third-party complaint to include a failure to procure claim.

facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 2. In other words,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756, syl. pt. 4. Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 3.

In his first assignment of error, petitioner argues that the circuit court erred in granting summary judgment in favor of respondents without first affording petitioner—in his "new role" as assignee of Fahey's negligence claim against respondents—time to conduct further discovery. Respondents counter that, in fact, petitioner had a full and fair opportunity to participate in discovery relating to Fahey's third-party negligence claim prior to the assignment and, further, petitioner was not entitled to any greater right to discovery than Fahey, his assignor. We agree.

As the assignee of Fahey's third-party negligence claim against respondents, petitioner "steps into the shoes of the assignor and takes the assignment subject to all prior equities between previous parties. His situation is no better than that of the assignor." *Cook v. E. Gas & Fuel Assoc.*, 129 W.Va. 146, 155, 39 S.E.2d 321, 326 (1946). *See* Syl. Pt. 10, *Lightner v. Lightner*, 146 W.Va. 1024, 124 S.E.2d 355 (1962) (holding that "[o]rdinarily an assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes; and an assignee takes subject to all defenses and all equities which could have been set up against an instrument in the hands of an assignor at the time of the assignment."). Petitioner's complaint against Fahey was filed over two years ago, and the March 6, 2015, discovery deadline was set following the filing of the third-party complaint. Although the assignment of Fahey's third-party claim to petitioner occurred in the interim, petitioner acquired no greater right in the claim than Fahey had at the time of the assignment, including a right to additional discovery.

Moreover, the record reveals that, prior to the settlement between petitioner and Fahey and the assignment of Fahey's third-party negligence claim against respondent to petitioner, petitioner's counsel was present when Fahey's counsel deposed Respondent Rees, who testified about her experience in handling clients who purchase workers compensation coverage; how she routinely explains to clients the purpose of deliberate intent coverage; and that some clients purchased deliberate intent coverage while others decline it. Respondent Rees further testified that she recalled discussing deliberate intent coverage with Joshua Fahey when he renewed his company's insurance policy in 2011, as evidenced by her contemporaneous handwritten notes, thus demonstrating that she discussed such coverage with Mr. Fahey and that he again declined to purchase it. When twice asked if she wished to question Respondent Rees during the course of Rees's deposition, petitioner's counsel declined. Furthermore, during Joshua Fahey's deposition,

petitioner's counsel did, in fact, ask Mr. Fahey questions about the third-party claim.

This Court has stated that, "'[a]bsent a few exceptions, this Court will review . . . procedural rulings of the circuit court under an abuse of discretion standard.' Syllabus Point 1, [in part], *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995)." Syl. Pt. 2, in part, *Jenkins v. CSX Transp., Inc.*, 220 W.Va. 721, 649 S.E.2d 294 (2007). The foregoing facts clearly demonstrate that petitioner was afforded a fair and full opportunity to engage in discovery in connection with Fahey's third-party claim against respondents. Petitioner's counsel was present during key witness depositions when the issue of Joshua Fahey's failure to purchase deliberate intent coverage was explored. Petitioner's counsel had ample opportunity to follow up with relevant questions but elected not to do so. Thus, we find that the circuit court did not abuse its discretion in denying petitioner's request to extend the discovery deadline in this case.

In his next assignment of error, petitioner argues that the circuit court erred in concluding that a duty to advise does not exist in West Virginia without addressing whether Fahey and respondents had a "special relationship" that would have created such a duty. The circuit court concluded that "[t]here is no duty under West Virginia law for an insurance agent to advise its clients about coverage. *See Hill, Peterson, Carper, Bee & Dietzler, P.L.L.C. v. XL Specialty Ins. Co.*, 261 F.Supp. 2d 546, 549 (S.D.W.Va. 2003)[,]" and that, thus, petitioner's claim "fails as a matter of law because [Fahey] 'failed to make a sufficient showing on an essential element of the case that it has the burden to prove.' Syl. Pt. 4, in part, *Painter* [*v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)]." The circuit court further concluded that "[a]lthough there is no duty to advise, even if such a duty was present, the facts before this Court do not establish a breach of the duty to advise because Joshua Fahey declined deliberate intent coverage . . . ." Petitioner argues that the circuit court's order ignores the fact that other jurisdictions have recognized a "special relationship" exception, which would give rise to a duty to advise if there is shown to be a "'long established relationship[] of entrustment in which the [insurance] agent clearly appreciates the duty of giving advice . . . or where there is a course of dealing over time putting the agent on notice that his advice is being sought and relied upon.'" *Hill, Peterson*, 261 F.Supp.2d at 548-49 (quoting *Sintros v. Hamon*, 810 A.2d 553, 556 (N.H. 2002). Petitioner argues that whether a "special relationship" existed between Joshua Fahey and respondents is a question of fact for the jury. *See Tiara Condo. Ass'n, Inc. v. Marsh*, USA, Inc. 991 F.Supp.2d 1271, 1281 (S.D.Fla. 2014). We find no error.

We agree with the circuit court's conclusion that this Court has never recognized an insurance agent's "duty to advise" an insured about coverage nor the "special relationship" exception that would trigger such a duty. Furthermore, regardless of whether such a duty exists under West Virginia law, the evidence of record shows that, in fact, Respondent Rees discussed deliberate intent coverage with Joshua Fahey in 2009 and again in 2011 but that he purposefully declined to purchase such coverage in order to save money on his insurance premiums. Based upon the foregoing, and viewing the evidence in the light most favorable to petitioner, the nonmoving party, we conclude that the circuit court did not err in granting summary judgment in favor of respondents on this issue.

In his third assignment of error, petitioner argues that the circuit court erred in concluding, as a matter of law, that petitioner does not have a "failure to procure" claim against

6

respondents. Petitioner argues that Respondent Rees met with Joshua Fahey only once—in 2009—at which time he had only one roofer-employee. It was at that time that Mr. Fahey signed the waiver of deliberate intent coverage. Petitioner argues that, by 2012, the year preceding his injury, Fahey Exteriors had eight to ten roofer-employees and that respondents had a duty to use reasonable skill, care, and diligence in procuring deliberate intent insurance coverage for Fahey. According to petitioner, "[t]he question of what insurance should be procured under those circumstances must include deliberate intent coverage."

In the order now at issue, the circuit court recognized the absence of case law in West Virginia addressing the failure to procure insurance, but noted that other jurisdictions have held that "in order to bring a claim for failure to procure, there must be a request for desired coverage that was not procured." *See Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 738 (Mo. Ct. App. 2009) (stating that "'[t]o prevail on a claim of negligent failure to procure insurance, the plaintiff must plead and prove that (1) the agent agreed to procure, for compensation, insurance from the insurance company, (2) the agent failed to procure the agreed upon insurance and, in so doing, failed to exercise reasonable care and diligence, and (3) as a result, the plaintiff suffered damages.' *Haynes v. Edgerson,* 240 S.W.3d 189, 195 (Mo.App. W.D.2007).)." The circuit court granted summary judgment in favor of respondents on petitioner's failure to procure claim "due to the lack of factual allegations that even suggest that Joshua Fahey requested deliberate intent coverage from [respondents] . . . ."

In his brief on appeal, it is apparent that petitioner misunderstands the "failure to procure" theory and, instead, conflates it with his claim that respondents negligently failed to advise Fahey about coverage. Petitioner's confusion is evidenced by the cases upon which he relies, neither of which involves a claim that an insurance agent failed to procure requested insurance, and both of which address the duty of an agent to exercise reasonable care in advising clients about coverage. *See Southwest Auto Painting and Body Repair, Inc. v. Binsfield*, 904 P.2d 1268 (Ariz. Ct. App. 1995) (finding that insurance agent failed to mention employee dishonesty coverage to client, and that the policy the agent "recommended did not include coverage for losses resulting from employee embezzlement, dishonesty, or theft. [The insured] neither knew that the policy lacked such coverage nor realized that such coverage was available[,]" *id.* at 1269, and concluding that there was "a question of fact as to whether the standard of care for a professional insurance agent . . . includes the responsibility to *advise* a prospective client of the availability of relevant types of coverage." *Id.* at 1272 (emphasis added and footnote omitted)); *Popham v. State Farm Mut. Ins. Co.*, 634 A.2d 28, 37-38 (Md. 1993) (holding that it is question of fact as to whether insurer and its agent "breached a duty [as] 'required by the exercise of their legal duty of reasonable care'" by failing to offer client "orally or otherwise, an opportunity to contract for . . . uninsured motorist coverage."). Clearly, the facts of this case demonstrate that respondents advised Joshua Fahey about deliberate intent coverage and that respondents, therefore, did not fail to procure such coverage as a matter of law. Accordingly, we must conclude that the circuit court did not err in granting summary judgment in favor of respondents on petitioner's failure to procure claim.

In his final assignment of error, petitioner argues that the circuit court erred by resolving respondents' "factual defense to the negligence claim in their favor rather than submitting the factual issue to the jury." Petitioner argues that a jury should have been permitted to determine whether respondents acted negligently in 2012 either by failing to procure deliberate intent

7

coverage for Fahey or by failing to explain deliberate intent to Joshua Fahey such that he understood the substantial risk his company was taking if he refused to purchase such coverage. Petitioner contends further that he had a designated expert who would have provided opinions on the appropriate standard of care and that respondents' conduct breached that standard. According to petitioner, when the summary judgment order was entered, the expert had not yet been deposed nor had he completed his report. For these reasons, and given the timing of the assignment of the third-party claim, petitioner argues that summary judgment was improperly granted.

We find petitioner's argument to be without merit. As discussed above, this Court has not heretofore recognized a claim based upon an insurance agent's failure to advise a client as to coverage. Furthermore, the opinion of petitioner's proposed expert, as set forth in petitioner's brief, fails to present a genuine issue of material fact, as the evidence of record demonstrates that Joshua Fahey was advised regarding deliberate intent coverage in 2009 and 2011 and that he purposefully declined to purchase such coverage in an effort to save money. Regardless of the expert's proposed testimony, petitioner has failed to present any evidence or argument to the contrary. As this Court has previously held,

> [w]hile the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some "concrete evidence from which a reasonable . . . [finder of fact] could return a verdict in . . . [its] favor" or other "'significant probative evidence tending to support the complaint.'" *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217, *quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968).

*Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59-60, 459 S.E.2d 329, 336-37 (1995). We, therefore, conclude that the circuit court did not err in granting summary judgment in favor of respondents.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 17, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

8