752 P.2d 523

**Clifford P. CURRAN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Absolute Air Conditioning, Respondent Employer,**

**Fremont Indemnity Co., Respondent Carrier.**

**No. 1 CA–IC 3772.**

Court of Appeals of Arizona, Division 1, Department D.

March 29, 1988.

Taylor & Schaar by Richard E. Taylor, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel The Industrial Com'n of Arizona, Phoenix, for respondent.

Jones, Skelton & Hochuli by Calvin Harris, Melinda K. Kelley, Phoenix, for respondents employer and carrier.

OPINION

FROEB, Presiding Judge.

This is a special action review of an Industrial Commission award for noncompensable claims. Compensability was denied because the applicable workers' compensation insurance covered claims against but not by the insured, a sole proprietor. The central issue on review is whether the insured has a remedy against the compensation carrier for the alleged negligence or deceit of the sub-agent who prepared the application for insurance. We hold that the insured is not entitled to relief against the carrier, and we affirm the award.

The petitioner filed two compensation claims for work-related injuries. By notices of claim status, the respondent carrier (Fremont) denied both claims. The second of these notices of claim status specified that "[s]ole proprietor is excluded from policy." The claimant protested both denials, and the claims were consolidated for hearing.

The sole dispute concerned coverage. The parties stipulated that the claimant had suffered two work-related injuries that would be compensable if covered. Furthermore, Fremont's defense was purely legal. It produced no evidence to controvert the petitioner's factual claims. It did, however, produce evidence regarding its underwriting practices.

We turn now to the facts. The claimant testified that in November, 1985 he was a licensed air conditioning and heating contractor doing business as Absolute Air Conditioning and Refrigeration (Absolute), a sole proprietorship. He did not then employ other workers and considered himself to be the sole employee of Absolute. He had won a City of Phoenix contract, which required the petitioner to provide workers' compensation and other insurance coverage. He contacted several insurance agencies, but only one, Corroon & Black of Arizona, Inc., could get the petitioner the required coverage in time.

The plaintiff dealt personally with "an agent representing Corroon & Black. He was an employee." According to the claimant, he showed this agent the City of Phoenix specifications for required insurance coverage, informed him that he was the only employee of Absolute, and reviewed his personal medical history with the agent. In addition, the petitioner provided an estimated payroll, but the record is unclear whether he specifically told the agent that the estimation was based exclusively on the petitioner's own salary. Based on this information, the agent himself completed the application for workers' compensation insurance. The agent never identified Fremont as the potential carrier. When the application was complete, the petitioner paid an estimated premium but did not read or sign the application. The claimant believed that he was then insured and that the insurance covered him personally.

The agent personally delivered a standard form application to Fremont. The applicant is identified as the petitioner, doing business as Absolute. The proposed effective date is the date of delivery, November 20, 1985. This application indicated that the applicant had two employees and a payroll of $36,000, but the employees were not otherwise identified. The application specifically *excluded* coverage for the petitioner. The agent alone had signed the application in the space provided for the "producer's signature."

The claimant subsequently received a standard form certificate of insurance concerning workers' compensation coverage and also giving information about general liability coverage with another carrier. It identified Fremont as the workers' compensation carrier, Corroon & Black as the producer, and the petitioner, doing business as Absolute, as the "insured." The claimant interpreted this to mean that he was covered personally. He also received an information page, which included nothing to indicate that the petitioner was personally excluded from coverage. He never received the policy or any endorsements. Believing that he was covered, the petitioner allowed other insurance to lapse. Although he acknowledged a problem confirming his coverage in January, 1986, after the first injury, the petitioner testified that the first disclosure of the coverage problem was the June, 1986 notice of claim status.

Fremont's underwriting manager confirmed that the application it had received excluded coverage for the petitioner. Fremont accordingly never issued an endorsement extending personal coverage to him. Furthermore, the carrier's underwriting policy prohibited this coverage, and Fremont would have rejected an application for this coverage. The manager did not know, however, if Corroon & Black's agent knew of this policy. Finally, the manager conceded that nothing in the policy itself would have notified the petitioner that he was not personally covered.

The standard form policy included an integration provision:

> The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

It also identified who is insured under the policy as follows:

> You are insured if you are an employer named in item 1 [the insured] of the Information Page. *If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.*

**436**

The policy did not otherwise identify whose injuries were covered. It merely stated that the insurer "will pay promptly when due the benefits required of you by the workers compensation law."

Based on this evidence, the administrative law judge issued the award for noncompensable claims. He concluded that Fremont's policy did not cover the petitioner personally, relying on A.R.S. § 23–901(5)(i). Furthermore, he concluded that Fremont was not responsible for the alleged misconduct of the agent and his employer, Corroon & Black. After affirmance on administrative review, this special action followed.

On review, the petitioner concedes the technical accuracy of the administrative law judge's first conclusion. However, he disputes the second conclusion, asserting that the insurance agent was Fremont's agent and, therefore, that his misconduct is imputable to Fremont.

## COVERAGE OF SOLE PROPRIETORS

We begin our analysis with the general coverage problem. The policy insures the insured against compensation liability. Coverage for particular claims, therefore, depends on the scope of compensation liability. This liability requires an employer-employee relationship. *See* A.R.S. §§ 23–901(5)(b), –1021(A); *accord* 1C A. Larson, *Workmen's Compensation Law* § 43.10 (1986). The traditional rule required employer and employee to have separate identities. For this reason, partners could not be employees of the partnership. *See* 1C A. Larson, *supra,* § 54.31. Similarly, a sole proprietor could not be his own employee. *See, e.g., Dunwoody v. Industrial Comm'n,* 22 Ariz.App. 63, 523 P.2d 114 (1974).

In 1973, the legislature liberalized the traditional rule as applied to partners. This amendment provided the insurance carrier with discretion to accept by written endorsement a working partner's application for coverage. *See* A.R.S. § 23–901(5)(h); Laws 1973, Ch. 136, § 1. The traditional rule continued to apply to the sole proprietor, however, until 1985.

*See* Laws 1985, Ch. 136, § 1. This amendment extended similar conditional coverage to sole proprietors:

The sole proprietor of a business subject to the provisions of this chapter may be deemed to be an employee entitled to the benefits provided by this chapter on written acceptance, by endorsement, at the discretion of the insurance carrier of an application for coverage by the sole proprietor.

*See* A.R.S. § 23–901(5)(i). This amendment became effective in August, 1985.

In the present case, the petitioner applied for insurance in November, 1985, a few months after the amendment's effective date. The administrative law judge correctly concluded, however, that the requirements of A.R.S. § 23–901(5)(i) were not satisfied. The traditional rule, therefore, continued to apply to the petitioner's personal claim unless Fremont is estopped to rely on the noncompliance with the statutory exception to this rule. We turn now to the petitioner's argument that estoppel applies in this case.

The central assertion underlying the petitioner's argument is that Corroon & Black's employee is an agent of Fremont. If this is so, the petitioner may have a variety of remedies against Fremont, including estoppel, reformation, and actions for negligence or fraud. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984). We reject the central assertion that Corroon & Black's employee is an agent of Fremont. Thus, we hold that petitioner has no cause of action based on estoppel.

## AGENCY

Insurance agents differ from independent agents or brokers. The former are authorized representatives of the insurer; the latter are middlemen representing the insured. For this reason, the acts of the insurance agent, but not those of the independent agent or broker, are imputable to the insurer. *See, e.g.,* 16 Appleman, *Insurance Law and Practice* § 8725 (1981). These traditional distinctions have been codified in Arizona. A.R.S. § 20–282 defines

an insurance agent as "an individual, firm or corporation *appointed by an insurer* to solicit applications for insurance or annuities or to negotiate insurance *on its behalf.*" (Emphasis added.) A.R.S. § 20–283 defines broker as "an individual, firm or corporation who for compensation as an independent contractor in any manner *solicits, negotiates or procures insurance* or the renewal or continuance thereof, *on behalf of insureds* or prospective insureds other than himself." (Emphasis added.) Finally, A.R.S. § 20–300(A) states, *"[a] broker, as such, is not an agent or other representative of an insurer* and does not have power by his own acts to obligate the insurer upon any risk or with reference to any insurance transaction." (Emphasis added.)

The distinction between insurance agent and broker does not depend on title or license, but upon the particular facts of the case. 16 Appleman, *supra,* § 8725 ("the question of whether one is an insurance agent or broker is a question dependent on the particular facts"); *see also* 16 Appleman, *supra,* § 8727. Where the insurer's actions create actual or apparent authority for a broker to act on its behalf, the broker becomes the agent of the insurer. 16 Appleman, *supra,* § 8731; *accord* 3 *Couch on Insurance 2d* § 25:95 at 450 (Rev. ed. 1984).

The Arizona Supreme Court has held that this factual inquiry is applicable despite the codification of the agent/broker distinction. *See Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 541–42, 647 P.2d 1127, 1139–40, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). Moreover, the court applied standard principles of agency law to this inquiry:

Under familiar principles of agency law, the broker may be authorized to do an act by a writing or other conduct of the insurer which, reasonably interpreted, causes the broker to believe that the insurer desires him to act on the insurer's behalf.... Once the insurer authorizes the broker to conduct a certain transaction, the insurer is liable to third persons upon contracts made by the broker acting within his authority. How-

ever, such contracts must be in proper form and with the understanding that the insured is a party.... This is especially true where the insurer has ratified the transaction.

*Sparks,* 132 Ariz. at 542, 647 P.2d at 1140 (citations omitted). Another recent case analyzes these standard agency principles as follows:

There are two main types of agency, actual (express) and ostensible (apparent). If there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts, then the authority of the agent is express. *Canyon State Canners v. Hooks,* 74 Ariz. 70, 243 P.2d 1023 (1952). If there is no such express authority, or if intent to create such authority cannot be implied from the actions of the principal and agent, then the next question is whether there is apparent agency. We have said:

"The ostensible agent is one where the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent. (Citations omitted)" *Canyon State Canners,* supra, 74 Ariz. at 73, 243 P.2d at 1025.

*Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 126, 613 P.2d 283, 286 (1980); *see also Miller v. Mason–McDuffie Co.,* 153 Ariz. 585, 739 P.2d 806 (1987). Furthermore, the party asserting the agency has the burden of proving it. *Gulf Ins. Co.,* 126 Ariz. at 126, 613 P.2d at 286.

In *Sparks* the supreme court noted that the insurers "contemplated that independent insurance brokers ... would solicit customers for their insurance." *Sparks,* 132 Ariz. at 542, 647 P.2d at 1140. However, this was not the only fact supporting implied actual or apparent authority. In addition, the insurer supplied the broker with copies of a sales brochure and applications for the group insurance and also required the broker to certify that he had explained in detail the coverage to the ap-

plicant. *Sparks*, 132 Ariz. at 542, 647 P.2d at 1140.

The petitioner interprets *Sparks* to mean that a broker becomes the agent of the insurer simply because the insurer contemplates receiving insurance business from brokers. We disagree. This interpretation creates an exception that obliterates the distinction between insurance agent and broker. It is contrary to the general rule that "an insurance broker does not become an agent of the insurer by merely soliciting an application and securing from the insurer's agent the policy which was issued." 3 *Couch, supra*, § 25:96 at 458; *accord* 16 Appleman, *supra*, § 8730.

In the current case, Corroon & Black clearly acted as the middleman. The petitioner had specific insurance needs, and he sought the services of an independent agency because it alone could satisfy them. The insurance package that Corroon & Black provided the petitioner included more than one carrier. Furthermore, there is no evidence that Fremont had a role in the training, supervision, or continuing education of Corroon & Black employees.

The petitioner also suggests that Fremont's underwriter conceded agency. At the hearing, the following exchange occurred:

Q. [Counsel for petitioner] [W]hat is the relationship between Fremont Indemnity Company and Corroon & Black of Arizona?

A. [Fremont's underwriting manager] He is an employee agent.

Q. And he, of course, is a corporation. And I assume it would be the insurance agents that are employed by the corporation of Corroon & Black who would be the specific agents that would be handling the applications for insurance with Fremont Indemnity?

A. That's correct.

It is apparent that the underwriting manager was confused by the question and offered an unresponsive answer. The administrative law judge did not find the quoted testimony to be a concession of agency. As the statement of the underwriting manager could be interpreted to mean that the employee is an agent of Corroon and Black, we find no reason to disturb the award.

In accordance with the foregoing, we hold that petitioner is not entitled to relief against Fremont for the alleged negligence or deceit of the Corroon & Black employee.

GRANT and CONTRERAS, JJ., concur.