96 P.3d 555

**PREMIUM CIGARS INTERNATIONAL, LIMITED, an Arizona corporation; Peter G. Charleston and Jane Doe Charleston, husband and wife, Plaintiffs–Appellants,**

v.

**FARMER–BUTLER–LEAVITT INSURANCE AGENCY, an Arizona corporation; Michael J. Auditore and Susan Auditore, husband and wife; Cindy Herrera; Stewart Smith West of Arizona, Inc., an Arizona corporation; Donna Engler and John Doe Engler, wife and husband, Defendants–Appellees.**

**Premium Cigars International, Limited, an Arizona corporation; Peter G. Charleston and Jane Doe Charleston, husband and wife, Plaintiffs/Cross–Appellees,**

v.

**Farmer–Butler–Leavitt Insurance Agency, an Arizona corporation; Michael J. Auditore and Susan Auditore, husband and wife; Cindy Herrera, Defendants/Cross–Appellants.**

No. 1 CA–CV 03–0310.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 19, 2004.

---

558

Jennings, Haug & Cunningham, L.L.P., by Larry J. Crown, William F. Begley, Jorge Franco, Jr. and Plattner Verderame, P.C., by Leroy W. Hoffman, Phoenix, Attorneys for Plaintiffs–Appellants/Cross–Appellees.

Quarles & Brady Streich Lang L.L.P., by Lonnie J. Williams, Jr., Phoenix, Attorney for Defendants–Appellees Stewart Smith West of Arizona, Inc. and Donna Engler.

The Hassett Law Firm P.L.C., by Myles P. Hassett and Thomas E. McCauley, Jr., Phoenix, Attorneys for Defendants–Appellees/Cross–Appellants Farmer–Butler–Leavitt Insurance Agency, Michael J. Auditore, Susan Auditore and Cindy Herrera.

Paul G. Ulrich, P.C., by Paul G. Ulrich and Ellen B. Davis, Phoenix, Attorneys for Amicus Curiae Independent Insurance Agents and Brokers of Arizona.

## OPINION

EHRLICH, Judge.

¶ 1 Premium Cigars International, Ltd., and Peter G. and Jane Doe Charleston (collectively "Premium") appeal from the trial court's summary judgment to Farmer–But-

ler–Leavitt Insurance Agency, Michael J. Auditore and his wife, and Cindy Herrera (collectively "Insurance Agency") and to Stewart Smith West of Arizona, Inc. and Donna and John Doe Engler (collectively "SSW"). The court concluded that a claim for professional negligence is not assignable to third-party claimants, and it dismissed Premium's negligence and breach-of-contract claims against Insurance Agency and Premium's negligence claim against SSW. Premium urges this court to reverse because it contends that both professional negligence claims and a breach-of-contract claim against an insurance agent (Insurance Agency) and a surplus insurance lines broker (SSW) are assignable.[1]

¶ 2 Insurance Agency cross-appeals from the trial court's prior denial of summary judgment in which the court ruled that Premium's complaint against Insurance Agency for breach of contract or professional negligence was timely filed. Insurance Agency asserts that it was entitled to summary judgment because Premium's claim is only for professional negligence, a tort, and the complaint was not filed within the applicable two-year statute of limitations. Insurance Agency also asserts that Premium should not be permitted to support its breach-of-contract claim with deposition testimony of unrepresented parties to the instant lawsuit.

## FACTS[2] AND PROCEDURAL HISTORY

¶ 3 In December 1996, Premium Cigars International, a tobacco wholesaler, obtained commercial general liability insurance through Auditore of the Insurance Agency. As part of an agreement with a distributor, Premium required a large tobacco liability policy. In order to obtain this amount of insurance, Auditore had to go to the excess and surplus lines market. He contacted SSW, an Arizona-licensed surplus lines broker.[3] SSW obtained commercial general lia-

---

1. The Independent Insurance Agents and Brokers of Arizona submitted an amicus curiae brief in support of the judgment.

2. In reviewing a summary judgment, we view the facts in the light most favorable to the party opposing the motion. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 194–95, 805 P.2d 1012, 1015–16 (App.1990).

3. A surplus lines broker is a specialty insurance broker licensed in Arizona that may obtain coverage for high-risk insurance through carriers not licensed in Arizona. *See generally* Ariz.Rev. Stat. §§ 20–407 to 20–422 (2002 & Supp.2003).

bility insurance through General Star Indemnity Company, the issuing insurer, and General Star Management Company, the underwriting agent for General Star Indemnity Company (collectively "General Star"),[4] for the policy period December 29, 1996 to December 29, 1997.

¶ 4 On September 10, 1997, Karissa Nisted, Premium's Chief Financial Officer, met Auditore at the Insurance Agency offices to review Premium's insurance coverage. On that day, Auditore instructed Herrera, another Insurance Agency employee, to process the requested hired auto and non-owned automobile liability insurance ("HNO") coverage. Herrera contacted SSW, which, in turn, contacted General Star regarding the HNO coverage. SSW did not have contact with Premium but, rather, inquired about Premium through Insurance Agency. The requested and assured effective date of the HNO coverage is highly disputed, but there is no doubt that General Star added the HNO coverage to Premium's policy effective September 18, 1997.

¶ 5 On September 16, 1997, two days before the effective date of the HNO coverage, Charleston, a Premium employee, was involved in a car accident while taking Premium clients from the airport to the Premium Phoenix office in his personal car. General Star denied coverage to Premium for Charleston's accident because the HNO coverage was not effective on that date. Without that coverage, neither Premium nor Charleston was covered under Premium's commercial general liability policy for the claims of the accident victims.

¶ 6 Premium retained a law firm to defend itself and Charleston against the claims of the accident victims ("Claimants"). The Claimants, Premium, Charleston and Charleston's personal automobile insurer then entered a Settlement Agreement and Covenant Not To Execute. In consideration of the settlement payment in the amount of the limit of Charleston's personal coverage, the Claimants agreed not to execute against Premium for any past, present or future

claims arising from the accident. The Claimants also agreed that they would "not seek further execution of collection on any judgment in this matter" from Premium, Charleston or Charleston's insurer. Additionally,

2.2 The Parties agree that Defendants, and each of them, may be named as Defendants in a prospective lawsuit to be brought by the [Claimants], or any of them. In any such lawsuit, Defendants will defend as appropriate. Defendants acknowledge their joint liability for the injuries and damages to [Claimants], which injuries and damages are the direct and proximate result of the negligence of Peter Charleston while acting in the course and scope of his employment with [Premium].

\* \* \*

3.2 Defendants [Premium] and Charleston further agree and acknowledge that [Claimants], or any of them, and their counsel may prosecute any such action as is deemed appropriate against the insurance agents and brokers who were involved in the attempted procurement of automobile liability insurance coverage by [Premium]. [Premium] and Peter Charleston agree that any such action may be instituted in the names of [Premium] and/or Charleston, as plaintiffs, and that [Premium] and Charleston will cooperate and assist in all manner as is reasonably requested by [Claimants] in connection with the prosecution of such claims and/or litigation. Said claims may be brought in the name of [Premium] and/or Peter Charleston and will be prosecuted for the exclusive benefit of [Claimants], who shall be entitled to any sums collected on any judgment, settlement or other payment resulting from the resolution of said claims. The Parties further agree that the prosecution of such claims against the insurance agents and/or brokers shall be at the sole expense of those [Claimants] who choose to pursue such claims, and, who shall indemnify and hold Defendants harmless from any costs, expenses or attorney's fees in-

---

4. Although Premium named General Star as a defendant in the original complaint, Premium's claims against General Star were settled, and Premium agreed to dismiss the complaint with prejudice. We therefore need not address Premium's initial claims against it.

curred in connection with said claims and/or litigation.

¶ 7 The Claimants, with the exception of one accident victim, subsequently filed a complaint against Premium and Charleston for negligence and vicarious liability, seeking damages for their injuries from the accident. A default hearing was held during which the Claimants presented unopposed testimony. On June 23, 2000, a judgment of $3.825 million was awarded to the Claimants against Premium.

¶ 8 The Claimants then, in the name of Premium, filed a complaint against Insurance Agency, asserting, among other claims, breach of contract and negligence. The general factual basis of Premium's complaint was that Nisted had demanded and was subsequently assured by Auditore that the HNO coverage was effective September 10, 1997, and that, relying on the fact of coverage, she had allowed Charleston and other Premium employees to drive their own cars while conducting Premium business. Premium specifically alleged that Insurance Agency had breached a contract to purchase HNO coverage that would be effective September 10, 1997. Premium also specifically alleged that Insurance Agency was negligent and had breached its duty of care.[5]

¶ 9 Premium amended its complaint on June 22, 2001, claiming that SSW had been negligent. Premium contended that General Star had contracted with SSW to act and serve as General Star's agent and/or broker and was therefore responsible for processing insurance requests from General Star. Premium argued that SSW was hired specifically to serve as General Star's intermediary between it and potential insureds of General Star and that, as such, SSW was a dual agent acting both for General Star and for Premi-

um. Because Insurance Agency was an intermediary, Premium contended, Insurance Agency was required to communicate directly and exclusively with SSW for the procurement of any insurance from General Star. Thus, Premium continued, as an intermediary between Insurance Agency and General Star, SSW was an agent or subagent that knowingly acted on its behalf and thereby owed Premium duties similar to those that Insurance Agency owed Premium.

¶ 10 Insurance Agency moved for summary judgment, claiming that Premium had failed to file its complaint within the two-year statute of limitations. Ariz.Rev.Stat. ("A.R.S.") § 12–542 (2003). Insurance Agency calculated that, since the instant suit involves damages in the form of attorneys' fees incurred in responding to the claims in the underlying case, these damages were incurred by January 12, 1998, the date on which General Star issued a formal denial of coverage to Premium and after which Premium retained counsel. The trial court denied this motion.

¶ 11 Insurance Agency and SSW subsequently moved for summary judgment on all claims. Insurance Agency argued, among other contentions, that Premium's claims were not assignable, and SSW additionally argued that it did not owe a duty to Premium.

¶ 12 The trial court entered a final judgment granting summary judgment to Insurance Agency and SSW. It found that a claim for professional negligence is not assignable to a third-party claimant and dismissed Premium's claims against Insurance Agency and SSW. The court specifically ruled:

> Thus, when there is alleged negligence in the performance of duties with respect to

---

**5.** Premium claimed that Insurance Agency breached its duty by failing to properly purchase HNO coverage to be effective September 10, as directed by Premium; failing to properly communicate with General Star and/or through General Star's agent, SSW, to secure the purchase of HNO coverage to be effective September 10; failing to follow-up with General Star and/or SSW to confirm that HNO coverage was issued and effective on September 10; failing to timely process any written request for further information from General Star and SSW; incorrectly

assuring and confirming to Premium that HNO coverage was purchased and made effective September 10; failing to properly coordinate communications among Insurance Agency, Auditore and Herrera regarding Premium's specific directive to purchase HNO coverage effective September 10; failing to obtain written confirmation from SSW and General Star that coverage was made effective September 10; and assuring Premium that HNO coverage was effective September 10, knowing that Premium would rely to its detriment upon this information.

that insurance agent-client relationship, such negligence would be considered professional negligence. In Arizona, professional negligence claims are not assignable. In this case, [Premium] and Charleston are the named plaintiffs. However, they have transferred the exclusive benefit of this lawsuit to the injured Claimants who have agreed to indemnify and hold [Premium] and Charleston harmless from costs or fees of this lawsuit in return for a covenant not to execute the prior judgment against [Premium] and Charleston. The transfer of the entire beneficial interest to Claimants is an assignment. The professional negligence claims in this case pertain to General Star, [Insurance Agency] and SSW as the insurance company, insurance agency, and insurance broker, respectively. Only [Premium]'s claim against General Star is assignable to the injured Claimants pursuant to *Damron v. Sledge*, 105 Ariz. 151[, 460 P.2d 997] (1969) and its progeny. General Star and the injured Claimants have settled; these Claimants' claims against [Insurance Agency] and SSW must be dismissed as a matter of law. [Citations omitted.]

¶ 13 Premium moved for reconsideration, alleging that its complaint was based on two separate issues, breach of contract and professional negligence, and that the trial court had granted summary judgment on the basis of case law addressing the assignability of professional-negligence claims only. The court ruled that "a professional negligence claim, whether sounding in tort or in contract, cannot be assigned."

¶ 14 Premium appealed, presenting the following issues:

1. Whether professional-negligence claims against an insurance agent and an insurance broker (a statutorily-mandated surplus lines broker) are assignable; and

2. Whether a breach-of-contract claim against an insurance agent is assignable.

¶ 15 SSW responds that this court may affirm the judgment on any basis that was properly submitted to the trial court, and it presents the following issues:

1. Whether Premium is prohibited from assigning its professional-negligence claims against SSW;

2. Whether Premium's claim against SSW is barred by the statute of limitations;

3. Whether SSW owed a duty to Premium; and

4. Whether SSW caused any harm to Premium.

¶ 16 Insurance Agency cross-appeals, presenting the following issues:

1. Whether the claim against Insurance Agency for its negligent failure to procure insurance accrued when General Star denied coverage and Premium incurred damage in the form of attorneys' fees;

2. Whether Premium has a valid breach-of-oral-contract claim against Insurance Agency, entitling it to a longer three-year statute of limitations, or whether Premium's claims instead sound in negligence so that the two-year statute applied; and

3. Whether the prior deposition testimony of unrepresented defendants and testimony from depositions of which Insurance Agency had no notice should be excluded because it was obtained in violation of Ethical Rule 3.4 and barred by Arizona Rule of Civil Procedure 32(a).

### DISCUSSION [6]

*I. Assignment of Professional–Negligence Claims Against Insurance Agents and Brokers*

¶ 17 Personal-injury and legal-malpractice claims are not assignable. *Botma v. Huser*, 202 Ariz. 14, 18 ¶ 19, 39 P.3d 538, 542 (App.2002). In *Botma*, Himes' daughter suffered severe injuries when Botma negligently caused an automobile accident. *Id.* at 15 ¶ 2, 39 P.3d at 539. The parties entered a Settlement, Assignment and Covenant Not To Execute Agreement in which Botma stipulated to a $12 million judgment against him and

---

**6.** In reviewing a summary judgment, we review de novo whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Roosevelt Elementary Sch. Dist. No. 66 v. State*, 205 Ariz. 584, 589 ¶ 24, 74 P.3d 258, 263 (App.2003).

assigned any malpractice claim that he had against his attorney and any bad-faith claim that he had against his insurance company in exchange for Himes' agreement not to execute against his personal assets. *Id.* at 16 ¶ 7, 39 P.3d at 540.

Botma also agreed that Himes could file a malpractice action in Botma's name, that Himes could control the case, and that "the proceeds of any judgment in an action brought in [Botma's] name pursuant to this agreement will be assigned to [Himes] following judgment upon request of [Himes]."

*Id.* Botma acknowledged the prohibition of assignments of legal-malpractice claims, but he sought an exception when a legal-malpractice claim was paired with a bad-faith/breach-of-contract claim against an insurance carrier. *Id.* at 18 ¶ 16, 39 P.3d at 542. This court declined to make such an exception, affirming that "the rule in Arizona against assignments [of personal-injury claims] should remain the same until changed by the legislature." *Id.* (citations omitted).

¶ 18 Public policy dictates the reasons a claim of legal malpractice is not assignable. First, "the gravamen of an action for legal malpractice is the negligent failure to utilize such skill, prudence and diligence as lawyers of ordinary skill and knowledge commonly possess." *Schroeder v. Hudgins,* 142 Ariz. 395, 399, 690 P.2d 114, 118 (App.1984), *vacated in part on other grounds by Franko v. Mitchell,* 158 Ariz. 391, 399–400 n. 1, 762 P.2d 1345, 1353–54 (App.1988). Second, "the relationship between attorney and client is of a uniquely personal nature," and attorney-malpractice claims should "not be relegated to the market place and converted to a commodity to be exploited and transferred to economic bidders." *Id.* (citation omitted); *see also Capitol Indem. Corp. v. Fleming,* 203 Ariz. 589, 593 ¶ 17, 58 P.3d 965, 969 (App.2002) (emphasizing that assignments encourage commercialization of claims); *Botma,* 202 Ariz. at 17 ¶¶ 11–13, 39 P.3d at 541; *Kiley v. Jennings, Strouss & Salmon,* 187 Ariz. 136, 140, 927 P.2d 796, 800 (App.1996) (holding that assignment of legal-malpractice claim not permitted because of personal nature of attorney-client relationship and fiduciary and ethical duty attorney owes to

client). If such assignments were enforceable, they "would become an important bargaining chip in the negotiation of settlements—particularly for clients without a deep pocket." *Botma,* 202 Ariz. at 17 ¶ 14, 39 P.3d at 541 (citation omitted).

■ ¶ 19 Premium contends that the same public-policy concerns are not at stake with an insurance agent and statutorily mandated broker, relying upon *Troost v. Estate of De-Boer,* 155 Cal.App.3d 289, 202 Cal.Rptr. 47 (1984), in which the California appellate court held that a negligence claim against an insurance agent is assignable. Premium's reliance is misplaced.

¶ 20 Like us, California courts have held that an "action for legal malpractice is not assignable [because it] is predicated on the uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises." *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 86 (1976). In *Troost,* though, the court rejected an analogy between legal-malpractice and insurance-agent malpractice, holding that the unique factors that make a claim for legal malpractice unassignable were not present in the underlying case. *Id.* at 52 (comparing *Goodley* and Cal. Civ.Code §§ 953–954 (legislative action permitting assignments of a "thing in action")). The court further found that "[t]he procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone." *Id.*

¶ 21 Contrary to *Troost,* we have held that an insurance agent does not owe a duty to third-parties and, thus, the transaction of insurance procurement does not have intended beneficiaries beyond the client. *See Napier v. Bertram,* 191 Ariz. 238, 244 ¶ 20, 954 P.2d 1389, 1395 (1998). In addition and contrary to the California courts, Arizona courts have held that an insurance agent has a personal relationship with an insured. "An insurance agent performs a personal service for his client, in advising him about the kinds and extent of desired coverage and in choosing the appropriate insurance contract for the insured." *Darner Motor Sales, Inc. v.*

*Universal Underwriters Ins. Co.,* 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984).

¶ 22 As the Arizona Supreme Court has suggested, an insurance agent additionally owes a duty to his clients similar to that of an attorney; it is "a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Id.* (citation omitted). Thus, "[w]hen an insurance agent performs his services negligently, to the insured's injury, he should be held liable for that negligence just as would an attorney ... who negligently performs personal services." *Id.* (quoting *McAlvain v. Gen. Ins. Co. of Am.,* 97 Idaho 777, 554 P.2d 955, 958 (1976)).

¶ 23 Premium attempts to distinguish this point, citing *Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 17, 945 P.2d 317, 328 (App.1997), in which we held that "economic damage claims" of an independent auditor "were not so 'personal' " that they could not be assigned. In *Standard Chartered,* an independent auditor performed an audit for United Bank of Arizona, a bank acquired by Union Bancorp of California, a subsidiary of Standard Chartered, a British banking corporation. In that situation, we concluded that, unlike an attorney-client relationship, "the auditor-client relationship exists not merely for the benefit of the client, but also for the benefit of the shareholders and the public with whom the client may transact business." *Id.* at 17, 945 P.2d at 328.

¶ 24 In contrast, the relationship between the insured and the insurance agent is not simply a commercial transaction but a transaction personal in nature for the benefit of the client. See *Darner Motor Sales,* 140 Ariz. at 397–98, 682 P.2d at 402–03; *Napier,* 191 Ariz. at 242 ¶ 14, 954 P.2d at 1393; *Southwest Auto Painting & Body Repair, Inc. v. Binsfeld,* 183 Ariz. 444, 447, 904 P.2d 1268, 1271 (App.1995) (finding no longer "good law" *Nowell v. Dawn–Leavitt Agency, Inc.,* 127 Ariz. 48, 52, 617 P.2d 1164, 1168 (App.1980), in which the court "held that an insurance agent owes a duty to his client only when the agent receives consideration for his services apart from the premium or when a long-established relationship of trust exists

between the agent and client"). Further, in *Standard Chartered,* the third party to which the claim was assigned, Standard Chartered, was a beneficiary of the independent audit whereas, in the instant case, the Claimants were strangers to the Premium–Insurance Agency–SSW transaction and not directly intended beneficiaries.

¶ 25 The instant case raises the issue whether a professional-negligence claim against an insurance agent and statutorily mandated insurance broker coupled with a breach-of-contract claim may be assigned. The same public policy is at stake with Insurance Agency as with an attorney-client relationship. Insurance Agency owed a duty to Premium to "exercise reasonable care, skill, and diligence in procuring insurance coverage." *Southwest Auto Painting,* 183 Ariz. at 448, 904 P.2d at 1272. This is similar to the duty that an attorney owes his client. Also, like an attorney-client relationship, an "insurance institution, insurance producer or insurance support organization" owes the insured specific duties of non-disclosure. *See* A.R.S. § 20–2113 (2002 & Supp.2003). Additionally, Insurance Agency had a personal relationship with Premium, advising it on the types and amounts of insurance it needed.

¶ 26 Were we to hold differently, the assignment of an insurance-agent negligence claim would become a "bargaining chip" in settlement negotiations, encouraging the commercialization of such claims just as is true of attorney-malpractice claims. As in the instant case, the insured and the third-party victims could negotiate a settlement when the insurance carrier refused to defend, in which case professional negligence claims would be assigned, leaving the unnoticed insurance carrier in a position to defend against claims brought by strangers, unable to know the full factual basis of the underlying cause of action. *See Karp v. Speizer,* 132 Ariz. 599, 601, 647 P.2d 1197, 1199 (App.1982) (noting the "dangers of maintenance and champerty" involved in assignments).

Whatever the form, whatever the label, whatever the theory, the result is the same. The policies create an interest in any recovery against a third party for bodily injury. Such an arrangement, if made

or contracted for prior to settlement or judgment, is the legal equivalent of an assignment and therefore unenforceable. *Botma*, 202 Ariz. at 18, 39 P.3d at 542 (quoting *Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 304, 576 P.2d 489, 492 (1978)). A negligence claim against an insurance agent is not assignable; the trial court correctly ruled that Premium's negligence claim against Insurance Agency could not be assigned.

¶ 27 The issue is more complicated with regard to Premium and SSW because the two entities never directly communicated with each other. SSW argues on appeal, as it did in its summary-judgment motion, that it did not owe Premium a duty and therefore cannot be held liable for any negligence claims.

¶ 28 We may consider arguments presented to the trial court without the need for a cross-appeal. *See* Ariz. R. Civ.App. P. 13(b)(3); *Ariz. Health Care Cost Containment Sys. Admin. v. Carondelet Health Sys.*, 188 Ariz. 266, 269, 935 P.2d 844, 847 (App. 1996). Further, the question of duty in a negligence action is one of law for the court to decide. *See Southwest Auto Painting*, 183 Ariz. at 446, 904 P.2d at 1270; *see also Napier*, 191 Ariz. at 242, 954 P.2d at 1393.

¶ 29 Premium's negligence claim against SSW stems from Premium's allegation that SSW served and breached its duties as Premium's agent, although SSW denies that such a relationship existed. An insurance broker's duty to exercise reasonable care, skill and diligence in procuring insurance coverage is based upon such an agency relationship. *See* 44 C.J.S. Insurance § 215 (1993); *see also* 44 C.J.S. Insurance § 262 (1993) (authority to make insurance contract determined by law of agency).

¶ 30 There are two usual types of agency, express and apparent. *Curran v. Indus. Comm'n*, 156 Ariz. 434, 437, 752 P.2d 523, 526 (App.1988). "If there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts, then the authority of the agent is express." *Id.* (citation omitted). Apparent agency exists when "the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent." *Id.* (citations omitted).

¶ 31 It is undisputed that SSW was not Premium's express agent. The only issue is whether SSW was Premium's apparent agent. , This presents an issue of fact, however. *See Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App. 1981) ("The question of whether an agency existed is one of fact."). If an agency relationship did not exist, then SSW owed Premium no duty and Premium could not establish a negligence claim against SSW. Conversely, if an agency relationship did exist, then SSW owed Premium the same duties as Insurance Agency, but Premium could not assign such professional-negligence claims to the Claimants. Either outcome would result in the dismissal of the negligence claim against SSW, making it unnecessary to remand for a factual determination of agency. Thus, the trial court properly dismissed Premium's negligence claim against SSW.

## II. Assignment of Breach–of–Contract Claim Against Insurance Agency

### A. Whether Premium Alleged a Contract Claim Against Insurance Agency

¶ 32 Premium argues that it articulated a separate breach-of-contract claim against Insurance Agency, but Insurance Agency contends that all claims against it sound in tort, not in contract. There are two types of implied contracts, one implied in fact and one implied in law.

A contract implied in fact is a true contract—an undertaking of contractual duty imposed "by reason of a promissory expression." ... Contracts implied in law, on the other hand are not true contracts at all. They are obligations "created by the law without regard to expressions of assent by either words or acts."

*Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 521, 747 P.2d 1218, 1220 (1987) (citing 1 A. Corbin, *Corbin on Contracts* §§ 18, 19, at 39, 44 (1963)).

¶ 33 Determining whether a contract arises out of contract or out of tort is important in awarding attorneys' fees pursuant to A.R.S. § 12–341.01(A) (2003). In *Barmat*, the supreme court held that a contract implied in fact is a claim that sounds in contract, whereas a contract implied in law is a claim that sounds in tort. 155 Ariz. at 523, 747 P.2d at 1222.

> [T]he implied [in law] contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is tort, not contract.
>
> * * *
>
> Where, however, the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist "but for" the contract, then breach of either express covenants or those necessarily implied from them sounds in contract.

*Id.* We also have explained that, when a court examines this issue, it "should look to the fundamental nature of the action rather than the mere form of the pleadings." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.,* 198 Ariz. 10, 15 ¶ 27, 6 P.3d 315, 320 (App. 2000). "The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Id.* at 16 ¶ 27, 6 P.3d at 321.

¶ 34 The fees cases that distinguish between claims arising out of contract from those arising out of tort are persuasive in deciding whether there is a valid breach-of-contract claim. *See Collins v. Miller & Miller, Ltd.,* 189 Ariz. 387, 395, 943 P.2d 747, 755 (App.1996).

> [E]ven where there is an express contract between the professional and the client, an action for breach of that contract cannot be maintained if the contract merely requires generally that the professional render services. Only if there is a specific promise

contained in the contract can the action sound in contract, and then only to the extent the claim is premised on the nonperformance of that promise.

*Id.* Thus we utilize the rationale of these cases to determine whether Premium's breach-of-contract claim is an action based in tort or contract.

¶ 35 A request of an agent to procure insurance may be a contract implied in fact or a contract implied in law. If the agent is rendering professional services, then this is a contract implied in law, giving rise to a tort action because the assurances to provide insurance are based upon the relationship of the parties. Alternatively, an oral promise to procure insurance may bind the parties in contract if the requirements of contract formation are met.

¶ 36 It is undisputed that the HNO coverage was not effective until September 18, 1997, but Premium contends that there was an oral contract between it and Insurance Agency to make the coverage effective on September 10, 1997. An oral contract for insurance between Insurance Agency and Premium may be valid if Premium can show "that the parties have agreed on all the essential terms of the contract, including the subject matter, the risk insured against, the time of commencement and duration of the risk, the amount of insurance and the amount of the premium." *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 125, 613 P.2d 283, 285 (1980) (citing 43 Am.Jur.2d *Insurance* § 202; *Ranger Ins. Co. v. Phillips,* 25 Ariz.App. 426, 429, 544 P.2d 250, 253 (1976)); *see also Tabler v. Indus. Comm'n,* 202 Ariz. 518, 521 ¶ 12, 47 P.3d 1156, 1159 (App.2002) ("The party asserting the existence of the oral contract has the burden of proof.").

¶ 37 Although Premium complained that Auditore promised to obtain HNO coverage effective on September 10, 1997, Insurance Agency contends that there was no meeting of the minds on this fact.[7] "Sum-

---

**7.** Insurance Agency also contends that, even if there was an oral contract, the contract is not enforceable because Insurance Agency did not have the authority to make such a promise. Essentially Insurance Agency argues that, because it was required to communicate through SSW to obtain insurance by General Star, it was not General Star's agent with the authority to make a binding insurance contract. Whether Insurance Agency had the authority or intentionally or inadvertently induced Premium to believe that it had the authority to bind coverage effective Sep-

mary judgment may only be granted when 'reasonable people could not agree with the conclusion advanced by the proponent of the claim,' and the moving party is entitled to judgment as a matter of law." *Sharp v. Sharp*, 179 Ariz. 205, 208, 877 P.2d 304, 307 (App.1994) (citing *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); Ariz. R. Civ. P. 56(c)). Reasonable people could agree that an oral contract may have existed between Premium and Insurance Agency to procure HNO coverage effective on September 10, 1997. We remand to the trial court to determine if a valid breach-of-contract claim existed. Such a determination is dispositive as to whether Premium's claim is a tort or contract action and, therefore, whether it may be assigned.

### B. Whether a Breach–of–Contract Claim May Be Assigned

¶ 38 The trial court found that "a professional negligence claim, whether sounding in tort or in contract, cannot be assigned." This is only partially correct. A breach-of-contract claim that is based upon the relationship of the parties, a contract implied in law, cannot be assigned because it sounds in tort and all of the same public policy concerns for not assigning a professional negligence claim apply. A breach-of-contract claim based upon a contract implied in fact can be assigned, however. *See* 6 Am.Jur. 2D *Assignments* § 58 (1999). *Compare* 6A C.J.S. *Assignments* § 36, *with* 6A C.J.S. *Assignments* §§ 32, 33, 37 (1975 & Supp.2001).

¶ 39 It is well-established that a claim for breach-of-contract may be assigned. *Deatsch v. Fairfield*, 27 Ariz. 387, 398, 233 P. 887, 891 (1925), *superseded by statute on other grounds as noted by Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz.App. 538, 540, 410 P.2d 495, 497 (App.1966); *see, e.g., Lingel v. Olbin*, 198 Ariz. 249, 253 ¶ 10, 8 P.3d 1163, 1167 (App.2000) (noting an exception to the rule of assignment that would prevent the assignment of personal injury claims).

A contractual right can be assigned unless

(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

(c) assignment is validly precluded by contract.

Restatement (Second) of Contracts § 317(2) (1981). Thus, unless certain exceptions apply, a breach-of-contract claim may be assigned.

¶ 40 Public policy drives the prohibition against assignment of professional-negligence claims. The same concerns are not at stake with a breach-of-contract claim because this type of claim arises from a commercial transaction rather than being "personal" in nature. With a contract claim, there is no implication of reliance or trust in the relationship the insured has with the agent. Unlike a negligence claim, it is not necessary to examine the full scope of Insurance Agency's conduct, prove a standard of care or utilize expert testimony. The substance of such a claim is the breach of a specific business contract.

¶ 41 We remand to the trial court to determine whether a contract implied in fact existed between Insurance Agency and Premium. If it did, then such a claim may be assigned to the Claimants. If there existed only a contract implied in law, then, as is consistent with public policy, Premium may not assign such a claim to the Claimants.

### III. Statute of Limitations

¶ 42 The only claim left for the trial court to resolve is whether Premium has a valid breach-of-contract claim against Insurance Agency. Premium had to have filed its cause of action for the alleged breach of the oral contract between it and Insurance Agen-

tember 10, 1997, is a question to be resolved by the trier of fact. *See Corral*, 129 Ariz. at 326, 630

P.2d at 1058; *see also* 44 C.J.S. *Insurance* § 266(b) (1993).

cy within three years after the cause of action accrued. A.R.S. § 12–543 (2003).

¶ 43 On cross-appeal, Insurance Agency argues that, because all of Premium's claims against it sound in tort, Premium is not entitled to a longer three-year statute of limitations. For the negligence claim, Insurance Agency argues that "[a] cause of action for negligence accrues when the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she has been injured by the defendant's negligent conduct," as opposed to accruing when the final judgment was entered, as the trial court ruled. Insurance Agency asserts that January 12, 1998, is the date of accrual because Premium was certain that Insurance Agency had not procured insurance effective on September 10, 1997, and Premium had incurred damages in the form of attorneys' fees. Insurance Agency does not provide an alternative argument to determine the accrual date for the breach-of-contract claim if such a cause of action was found to exist. Essentially, Insurance Agency advocates for use of the discovery rule in determining the accrual date for the statute of limitations.

¶ 44 Premium relies upon insurance-bad-faith and legal-malpractice cases, both tort causes of action, for its argument that the date of accrual occurs when it "knows, or in the exercise of reasonable diligence should have known, of the defendant's wrongful conduct *and* the plaintiff's damages are certain, non-speculative and irreversible." Premium maintains that both its contract and tort claims did not accrue until July 23, 2000, when the judgment entered against Premium in favor of the Claimants became final and, thus, the amount of damages against Premium was non-speculative. Essentially, Premium relies upon the final-judgment rule for its determination of the accrual date.

¶ 45 The trial court ruled that the cause of action against Insurance Agency and SSW did not accrue until the final judgment was entered in the underlying case because this is the date when Premium's liability for the accident and the Claimants' damages became final and binding.[8] While the court found that, "[a]s of the January 12, 1998 denial of coverage and refusal to defend, [Premium] was on notice of a potential breach of contract and bad faith claim as against General Star, and a putative claim for professional negligence as against Defendant [Insurance Agency]," it held:

> [Premium's] cause of action as against either [General Star or Insurance Agency] did not accrue until such time as [Premium's] damages became certain, non-speculative and irreversible. *See, e.g. Taylor v. State Farm Mut. Auto. Ins., Co.,* 185 Ariz. 174[, 913 P.2d 1092] (1996). It is impossible to determine if the insure[r] acted in bad faith, or the extent of the insured's damages, until the underlying liability is finally determined. Similarly, [Insurance Agency]'s failure to procure requested insurance may very well constitute a breach of contract or professional negligence, but is not actionable until such time as it has caused the insured to be damaged.

 ¶ 46 In Arizona, a defense based upon the statute of limitations is generally disfavored. *Montano v. Browning,* 202 Ariz. 544, 546 ¶ 4, 48 P.3d 494, 496 (App.2002).

> [D]etermination of a claim's accrual date [for limitations period] usually is a question of fact, with the inquiry centering on the plaintiff's knowledge of the subject event and resultant knowledge of the subject event and resultant injuries, whom the plaintiff believed was responsible, and plaintiff's diligence in pursuing the claim.

*Logerquist v. Danforth,* 188 Ariz. 16, 22, 932 P.2d 281, 288 (App.1996) (citations omitted). This court will not resolve statute-of-limitations issues based upon disputed facts, *id.,* although we will review questions of law de novo. *Montano,* 202 Ariz. at 546 ¶ 4, 48 P.3d at 496.

¶ 47 Insurance Agency contends that the trial court erred in its determination of the

**8.** The trial court erred in finding that the cause of action accrued on July 26, 2000. If the final-judgment rule is used, the accrual date would have been July 23, 2000, because judgment in the underlying action was filed on June 23, 2000, although the corresponding minute entry was not filed until June 26, 2000. Premium had thirty days to appeal; if it did not, the judgment became final and binding on that date.

accrual date of the cause of action for statute-of-limitations purposes. Because we have concluded that Premium did not have a valid tort claim against Insurance Agency or SSW, our review is limited to whether the trial court properly determined when the statute of limitations began to run for the breach-of-contract claim against Insurance Agency.

¶ 48 The trial court based its ruling on *Taylor*, 185 Ariz. 174, 913 P.2d 1092. The court in *Taylor* held that third-party bad-faith actions are governed by the tort statute of limitations and accrue when the judgment in the underlying action becomes final and binding. *Id.* at 175–77, 179, 913 P.2d at 1093–95, 1097.

¶ 49 Generally, the statute-of-limitations period begins to run and the cause of action accrues when one party may sue another. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995). "The traditional construction of that rule has been that the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim." *Id.* (citations omitted).[9] Customarily tort claims have been governed by a more generous discovery rule. "[A] tort claim accrues when a plaintiff knows, or through the exercise of reasonable diligence should know of the defendant's wrongful conduct." *Taylor*, 185 Ariz. at 177, 913 P.2d at 1095; *see Gust, Rosenfeld*, 182 Ariz. at 588–89, 898 P.2d at 966–67.

¶ 50 The final-judgment rule is a refinement of the discovery rule that dictates when the plaintiff knows or, through the exercise of reasonable diligence, should have known of the defendant's wrongful conduct. *See Taylor*, 185 Ariz. at 178, 913 P.2d at 1096

("Because Arizona bad faith law does not require breach of an express covenant in the contract, the argument goes, the injury results when the excess verdict is rendered."). The final judgment rule is applicable in third-party bad-faith insurance claims and legal-malpractice claims. *Id.* at 178–79, 913 P.2d at 1096–97. Policy dictates this rule because, if "the insured [were] to bring an action before the judgment becomes final [this] would force an insured to sue his carrier while, at the same time, depend on the carrier to zealously represent him at the appeal of his third-party claim." *Id.* at 179, 913 P.2d at 1097. While it might be appropriate to follow the final-judgment rule in a negligence action concerning insurance agent/broker malpractice, it is not necessarily so in a breach-of-contract action.

¶ 51 Premium asserts that Insurance Agency broke an express oral contract to procure insurance effective on September 10, 1997. In such a case, Premium relies on its own counsel to litigate against Insurance Agency; it is not dependent on Insurance Agency or the insurance company to provide a defense. The final-judgment rule does not apply to a claim for a breach of contract implied in fact.

¶ 52 The discovery rule, however, has been held to apply to certain breach-of-contract claims governed by A.R.S. § 12–548.[10] *See Gust, Rosenfeld*, 182 Ariz. at 591, 898 P.2d at 969. The discovery rule applies when "the plaintiff's injury or the conduct causing the injury is difficult for [the] plaintiff to detect." *Id.* at 590, 898 P.2d at 968. However, it does not apply to cases in which the plaintiff's injury is open and obvious. *Id.* at 589, 898 P.2d at 967.

¶ 53 In *Gust, Rosenfeld*, that law firm leased office space and was given a "most

---

9. This court held in *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 75–76 ¶ 13, 985 P.2d 556, 560–61 (App.1998) (quoting *Everett v. O'Leary*, 90 Minn. 154, 95 N.W. 901, 902 (1903)):

The right of action in case of a failure to issue a policy of insurance as agreed upon arises out of a breach of the contract to insure, not out of a contract for insurance.... The general rule is that a cause of action for a breach of contract accrues immediately upon the happening

of the breach, even though the actual damage resulting therefrom may not occur until afterward.

10. Section 12–548, A.R.S., provides:

An action for debt where indebtedness is evidenced by or founded upon a contract in writing executed within the state shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward.

favored nation" clause in its lease that "entitled Gust to receive as good a deal on rent and other allowances as any tenant who signed a lease at any time up until the building was eighty-five percent occupied." *Id.* at 587, 898 P.2d at 965. Later that year, another law firm, Snell & Wilmer, entered a contract with the landlord that contained terms more favorable than those in the Gust, Rosenfeld lease. Three years later, Gust, Rosenfeld developed a suspicion that Snell & Wilmer had a more favorable lease, and so it asked the leasing agent, but it was assured that nothing had changed such that Gust, Rosenfeld's most-favored-nation clause could have been invoked. Approximately seventeen years after Snell & Wilmer had signed its more favorable lease, however, Gust, Rosenfeld became aware of it and brought an action against the landlord, Prudential Insurance Company. Prudential raised the statute-of-limitations defense since more than six years had passed since the breach had occurred. *Id.* at 588, 898 P.2d at 966. The trial court applied the discovery rule, and the jury determined that the statute of limitations did not bar Gust, Rosenfeld's claim.

¶ 54 The Arizona Supreme Court granted review to determine whether the discovery rule may apply to breach-of-contract actions. The court opined that "[t]he rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Id.* at 589, 898 P.2d at 967. It reasoned that, because the rule's rationale "relates more to the circumstances under which a legal duty is breached and less to the nature of the cause of action, we believe Arizona courts should be able to apply the rule to appropriate cases in contract as well as in tort." *Id.* at 590, 898 P.2d at 968.

> The breach involved a private transaction between Prudential's predecessor and a third party. The conduct was difficult for Gust to detect because Gust was not a party to it. The leasing agent was in a position of superior knowledge and had a full opportunity to know that its conduct constituted a breach of the lessor's contractual duty to Gust. These are the cir-

cumstances under which application of the discovery rule is most warranted.

*Id.*

¶ 55 This case is dissimilar from *Gust, Rosenfeld,* and we conclude that these are not the circumstances that warrant the application of the discovery rule. The breach did not involve a private transaction of which Premium was unaware. Rather, Premium was a party and privy to the communications among Insurance Agency, SSW and General Star. This case, while seemingly complicated factually, is a case in which any breach is open and obvious. Therefore, the traditional rule of when the cause of action accrues and when the statute-of-limitations period commences applies. *Id.* at 589, 898 P.2d at 967. The date on which this cause of action arose is disputed and cannot be ascertained from the record before us. Therefore, we remand to the trial court to determine not only whether Insurance Agency breached an oral contract with Premium, but when a cause of action for that breach arose.

### IV. Evidentiary Issues

¶ 56 Insurance Agency urges us—as it did the trial court—to disregard the prior deposition testimony of Auditore and Herrera because it was allegedly obtained in violation of Arizona Rule of Civil Procedure 32(a) and Ethical Rule 4.3. The trial court did not rule on this or any of Insurance Agency's motions in limine because it granted summary judgment in favor of Insurance Agency and SSW, and dismissed all of Premium's claims against Insurance Agency and SSW.

¶ 57 A motion in limine filed in a civil case "is generally used as a substitute for evidentiary objections at trial" and "as a means to exclude evidence from trial for violations of the disclosure rules." *Zimmerman v. Shakman,* 204 Ariz. 231, 235 ¶ 12, 62 P.3d 976, 980 (App.2003). A trial court is given considerable discretion in resolving those issues, *State v. Duzan,* 176 Ariz. 463, 465, 862 P.2d 223, 225 (App.1993), and so we do not review its decisions until they are made. *See McMurren v. JMC Builders, Inc.,* 204 Ariz. 345, 351 ¶ 20 n. 7, 63 P.3d 1082, 1088 (App.2003) (holding against advisory opinions). Because the trial court has

not ruled on the admissibility of this evidence, we remand, allowing it to exercise its discretion without advising it on how to make such a ruling.

### V. Attorneys' Fees

¶ 58 Pursuant to A.R.S. § 12–341.01(A), "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Insurance Agency requests an award of appellate attorneys' fees pursuant to § 12–341.01 because, it argues, it is entitled to fees on a breach-of-contract claim when the judgment is based upon the absence of a contract, citing *Lacer v. Navajo County*, 141 Ariz. 392, 394, 687 P.2d 400, 402 (App.1984).

¶ 59 Insurance Agency prevailed on the negligence claim, a tort claim, but we remand the contract claim to the trial court for a factual determination. Therefore, it did not prevail on the basis of contract or lack thereof, and it is not entitled to attorneys' fees on appeal.

### CONCLUSION

¶ 60 We affirm in part the judgment of the trial court dismissing Premium's negligence claims against Insurance Agency and SSW, but remand to the trial court for a factual determination whether Premium pled a breach-of-contract claim against Insurance Agency and, if so, when the cause of action accrued for statute-of-limitations purposes.

CONCURRING: JON W. THOMPSON, Presiding Judge and JEFFERSON L. LANKFORD, Judge.