IKUTA, Circuit Judge,
specially concurring:
“If it looks like an insurance agency and acts like an insurance agency,” Maj. Op. at 754, it might be a brokerage company whose activities are not covered by 18 U.S.C. § 1033.
Section 1033 is drafted narrowly. It criminalizes conduct by persons who are “engaged in the business of insurance.” 18 U.S.C. § 1033(a)(1). The definition of “business of insurance” is, on its face, limited to activities by insurers. The statute defines the term to mean either “the writing of insurance,” or “the reinsuring of risks,” in both cases, “by an insurer.” 18 U.S.C. § 1033(f)(1). It defines “insurer” to mean “any entity the business activity of which is the writing of insurance or the reinsuring of risks.” Id. § 1033(f)(2). The “business of insurance” includes activities by employees and agents of an insurer, as well as activities “incidental to” writing insurance or reinsuring risks that may be undertaken by an insurer. Id. § 1033(f)(1). Nothing in the statute suggests that someone who is not an insurer or authorized to act on an insurer’s behalf is in the “business of insurance.”
While a broker is involved in the insurance industry, its business does not generally meet the definition of “business of insurance” for purposes of § 1033(f). In general, “the legal distinction between an ‘agent’ and. a ‘broker’ is that an ‘agent’ transacts insurance as the agent of the insurer and a ‘broker’ transacts insurance as the agent of the insured with regard to a particular insurance transaction.” 2 Jeffrey E. Thomas New Appleman on Insurance Law Library Edition § 1502[1][a] (LexisNexis 2009) (emphasis in original); Black’s Law Dictionary 220 (9th ed.2009) (“insurance broker” defined as “a person who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else, but not as an officer, salaried employee, or licensed agent of an insurance company.”).
To be sure, a broker could also be an agent for an insurance company. Whether an entity is a broker or an insurance agent (or both) depends on “the particular facts of the case.” Curran v. Indus. Comm’n of Ariz., 156 Ariz. 434, 752 P.2d 523, 526 (Ariz.Ct.App.1988); see also Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127, 1140 (1982). Courts apply agency principles of the applicable state to determine whether a broker is also serving as an agent of an insurance company. See United States v. Segal, 495 F.3d 826, 836 (7th Cir.2007) (rejecting defendants’ claim that they were brokers and therefore not “engaged in the business of insurance” under § 1033(b), in light of Illinois law that a broker could become an agent of the insured under some factual circumstances) (citing Capitol Indem. Corp. v. Stewart Smith Intermediaries, Inc., 229 Ill.App.3d 119, 171 Ill.Dec. 52, 593 N.E.2d 872 (1992)); see also United States v. Lequire, 672 F.3d 724, 728 (9th Cir.2012) (looking to Arizona law to determine that an insurance broker did not hold property in trust for an insurer for purposes of § 1033). *760 Under the Arizona law applicable here, see id., a broker does not become the agent of an insurer simply because “the insurer contemplates receiving insurance business from brokers.” Curran, 752 P.2d at 527. Nor does a broker become an insurance agent if the broker merely solicits applications for the insurer and secures “from the insurer’s agent the policy which was issued.” Id.
But the majority here does not determine whether R & C is writing insurance or reinsuring risks, or whether R & C is an agent of Safeco or Royal Surplus under principles of Arizona agency law. Instead, the majority relies on an expansive reading of § 1033 that could impose criminal liability not just on an insurer but also on any third party who interacts with insurers. Specifically, the majority focuses on the language' defining the “business of insurance” as writing or reinsuring risks by an insurer “including all acts necessary or incidental to such writing or reinsuring.” 18 U.S.C. § 1033(f)(1). According to the majority, this means that any action by a third party that is “necessary or incidental to” an insurer’s business is part of the “business of insurance.” Maj. Op. at 754. Because a broker’s business is to help customers obtain insurance, and such activities are incidental to writing insurance, the majority’s interpretation appears to make brokerage businesses per se subject to liability under § 1033, regardless of whether a particular .broker is acting as an agent of an insurer. Indeed, the majority’s interpretation may make even a policy holder who writes a regulator and falsely accuses an insurance company of stealing his money liable under- § 1033. The policy holder’s letter is likely a “financial document” under our opinion, and receiving an insurance policy is “incidental to” the insurance company’s business of insuring and reinsuring.
There is no indication Congress intended the statute to be read this broadly. The most natural reading of the “including all acts” language in § 1033(f)(1) (emphasis added) is that it refers to other acts “by an insurer.”[1] This could include activities typically undertaken as part of an insurer’s business, such as drafting financial reports or communicating with regulators, because such acts are “incidental to” the insurance company’s business of insuring and reinsuring. By contrast, when Congress wanted the statute to cover third parties such as brokers, it said so directly. In another subsection of the same statute, 18 U.S.C. § 1033(b)(1), Congress expressly imposed liability on third parties who are not insurers. In that section, the statute provides that a person who is either “engaged in the business of insurance” or “involved (other than as an insured or beneficiary under a policy of insurance) in a transaction relating to the conduct of affairs of such a business” can be held liable. This latter category would include brokers, and expressly excludes a policy holder.
Although I disagree with the majority’s overly broad reading of the statute, I agree with the result. A broker can become an insurance agent based “upon the particular facts of the case” if the insurer’s actions “create actual or apparent au *761 thority for a broker to act on its behalf.” Curran, 752 P.2d at 526. Here, R & C engaged in a range of activities as an insurance broker, some (but not all) of which may be evidence that R & C acted as an agent of the insurer.[2] Maj. Op. at 753-54. At a minimum, there was evidence at trial indicating that R & C could bind Royal Surplus, i.e., issue a contract of insurance, and a person who has the power “to obligate the insurer upon any risk” is an agent of the insurer. Curran, 752 P.2d at 526. Accordingly, viewing the evidence in the light most favorable to the government, a reasonable juror could conclude that R & C was an agent of Royal Surplus, and thus falls under the definition of person involved in the “business of insurance.” I therefore concur with this portion of the majority’s opinion on these limited grounds.

. The full definition states:
(1) the term "business of insurance” means' — •
(A) the writing of insurance, or
(B) the reinsuring of risks,
by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons.
18 U.S.C. § 1033(f)(1).

. The majority’s claim that R & C “even went so far as to issue fake insurance certificates to clients, which listed Renzi as Jimcor Insurance Company’s 'authorized representative,’ ” Maj. Op. at 754, erroneously confuses a broker’s work with an insurer’s work. The fake Certificate of Liability Insurance shows that R & C was the “producer” which is consistent with being a broker, see Curran, 752 P.2d at 524, 527, and Renzi signed the certificate as the authorized representative of R & C, (not Jimcor) certifying only that if Jimcor canceled the policy, R & C would not be liable.